# LOVELL *v.* CRAGIN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 212. Argued March 12, 13, 1890.—Decided May 19, 1890.

When the matter set up in a cross-bill is directly responsive to the averments in the bill, and is directly connected with the transactions which are set up in the bill as the gravamen of the plaintiff's case, the amount claimed in the cross-bill may be taken into consideration in determining the jurisdiction of this court on appeal from a decree on the bill.

In Louisiana the holder of one or more of a series of notes, secured by a concurrent mortgage of real estate, is entitled to a *pro rata* share in the net proceeds, arising from a sale of the mortgaged property, at the suit of a holder of any of the other notes, and an hypothecary action lies to enforce such claim, based upon the obligation which the law casts upon the purchaser to pay the *pro rata* share of the debt represented by the notes that were not the subject of the foreclosure suit.

Such obligation, cast by law upon the purchaser, partakes of the nature of a judicial mortgage, and, in order to be effective as to third persons, (*i.e.* persons who are not parties to the act or the judgment on which the mortgage is founded,) it must be inscribed with the recorder of mortgages, and no lien arises until it is so registered.

Under the laws of Louisiana a claim for damages arising from alleged wrongful acts of a party with respect to removing personal property from a plantation while he had possession of it, and for waste committed by him about the same time, are quasi-offences, and are prescribed in one year.

It appearing that the subject of the controversy in this case is identical with that which was before the court in an action at law at October term, 1883, in *Cragin* v. *Lovell*, 109 U. S. 194, and that the parties are the same, and that the court then held that " the petition shows no privity between the plaintiff and Cragin," and " alleges no promise or contract by Cragin to or with the plaintiff: " *Held,* that while the plea of *res judicata* is not strictly applicable, the court should make the same disposition of the controversy which was made then.

IN EQUITY.   The case is stated in the opinion.

*Mr. W. Hallett Phillips* (with whom were *Mr. Charles A. Conrad* and *Mr. Joseph P. Hornor* on the brief) for appellant.

*Mr. J. D. Rouse* (with whom was *Mr. William Grant* on the brief) for appellees.

MR. JUSTICE LAMAR delivered the opinion of the court.

This is a suit in equity, in the nature of an hypothecary action, under the Civil Code of Louisiana, brought in the court below by George D. Cragin, a citizen of New York, against William S. Lovell, a citizen of Mississippi, and Orlando P. Fisk, a citizen of Michigan. Its object was to have a lien declared in favor of the complainant, upon certain real property belonging to the defendant Lovell, and, in default of the payment thereof by Lovell, to have the property sold to satisfy it.

The bill was filed on the 18th of January, 1883, and its material allegations were substantially as follows: On the 31st of January, 1870, Louisa S. Quitman and Eliza A. Quitman

sold to Orlando P. Fisk a sugar plantation known as the Live
Oak plantation, and certain other particularly described real
estate, all situated in the parish of Terrebonne, Louisiana, and
received in part payment therefor nine promissory notes made
by Fisk, payable to his own order and endorsed in blank by
him, of $2000 each, due in one, two, three, four, five, six,
seven, eight and nine years, respectively, from that date, all of
which bore interest at seven per cent until maturity, and eight
per cent thereafter until paid, and were secured by a mortgage
on the said plantation "in favor of said vendors, their heirs
and assigns, and all future holder or holders of said promis-
sory notes or any of them." Fisk paid the first of those notes
when it came due, but did not pay any of the others. The
second one not having been paid at maturity, the Misses Quit-
man, on the 14th of February, 1872, brought suit on it against
Fisk in the Circuit Court of the United States for the District
of Louisiana, to foreclose the mortgage. Afterwards the
Quitmans, in consideration of $2386, the amount of that note,
including accrued interest, attorneys' fees and costs, paid to
them by complainant, sold and transferred to him all their
right, title and interest in the note and in that suit, and subro-
gated him to all their rights in the premises against Fisk, and
under the mortgage. Fisk having also failed to pay the third
note, the Quitmans brought suit thereon against him on the
21st of May, 1873, in one of the state courts; and a few
months afterwards, in consideration of $2608.65, the amount
of the note, including accrued interest, attorneys' fees and
costs, paid to them by complainant, sold and transferred to
him all their right, title and interest in the note and in that
suit, with a like subrogation as in the preceding case. The
fourth note not having been paid at maturity, the Quitmans
brought suit on it against Fisk on the 26th of February, 1874,
in one of the state courts of Louisiana, and foreclosed the
mortgage; and, under executory process issued by that court,
the mortgaged property was seized by the sheriff of the parish,
and regularly sold by him on the 2d of May, 1884, to the
Misses Quitman for $10,900, which sum, after paying costs
and expenses, was reduced to $10,447.05, the whole of which

portion of the price of said property was retained by the said Louisa S. and Eliza A. Quitman.

The bill further alleged, that by the sale to the complainant of the two before-mentioned notes, with subrogation as aforesaid, he acquired a right of priority of payment out of the proceeds of the sale of the property mortgaged to secure the same; that by such sale and transfer to him they made the remaining notes held by them subordinate in rank to those so sold to him; that at the time of the sale the Quitmans were the holders and owners of all of the other notes; and that they, having retained the proceeds of the sale of the property, became and were liable to him for the full amount due upon his two notes, including interest, costs and attorneys' fees, which amount was unpaid and remained secured by lien upon the property.

It was then averred, that Louisa S. Quitman afterwards died, leaving her sister, Eliza A. Quitman, as sole heir and legatee, who entered into the property and took possession of it; that Eliza A. Quitman died soon afterwards, having appointed the defendant Lovell sole executor of her estate, which was still in the course of administration; and that, before the filing of the bill, complainant notified Lovell, as executor, that he was the holder and owner of the two notes purchased by him, and demanded payment of the amount due thereon, including interest and costs, which was refused.

It was then averred that the defendant Lovell is in possession of the property, under a claim of ownership by title derived from the Quitmans, or the last survivor of them, which claim is subject to the demand of complainant; and that, after the aforesaid demand and refusal of payment of his two notes, complainant demanded payment thereof from Lovell, as possessor of the mortgaged property, at least ten days before the filing of the bill, which was also refused, and the defendant Lovell still refused payment of the notes, and also refused to surrender the lands or to permit them to be sold to satisfy complainant's demand.

By reason of the aforesaid premises, complainant averred that he had a first lien and privilege on the mortgaged prop-

erty in the possession of Lovell, for the amount due on his notes, and had the right to have it seized and sold to pay the same.

The bill prayed that an account be taken of the amount due complainant on his notes; that he be decreed to have a first lien and privilege upon the mortgaged property for the amount found due him, which the defendants should be decreed to pay, together with costs, attorneys' fees, etc.; that in default thereof the property be seized and sold to pay his demand; that, if the amount realized from such sale be insufficient to pay his demand, he might have execution for the deficiency against the estate of Eliza A. Quitman; and for other and further relief.

April 2, 1883, the defendant Lovell filed a general demurrer, which was overruled December 10, 1883, reinstated December 14, 1883, and withdrawn January 9, 1884, with leave to file his plea, which he did on the same day. This plea set up (1) that the notes sued on by the complainant having been executed by Fisk, January 31, 1870, and made payable in two and three years from date, respectively, were barred by prescription of five years. (2) That the act of mortgage by which payment of those notes was secured, having been executed January 21, 1870, and recorded February 12, 1870, lapsed and expired and became extinguished January 21, 1880, it having never been reinscribed. (3) That the foreclosure of the mortgage by the Quitmans on one of the notes secured concurrently with those of the complainant, and the sale of the mortgaged property, had the effect to extinguish the mortgage. (4) That the defendant was not in any manner interested in the notes sued on or in any of the others of the series, nor in the mortgage by which they were secured, but acquired the property by purchase, for a valuable consideration, long after the seizure and sale of it to satisfy the mortgage, and therefore subsequently to the extinction of the mortgage.

This plea was overruled June 9, 1884, and March 6, 1885, the complainant amended his bill. In this amendment complainant alleged that, in a suit brought by him in the court below against Fisk, a decree was entered on the 6th of June,

1873, that he recover from Fisk the sum of $96,526.71, and that, as Fisk had used $4918 of complainant's money in examining titles, paying taxes and purchase money of the property in dispute, the latter sum was decreed to be an equitable lien upon the plantation, to take effect from February 13, 1872, the date when the bill in that suit was filed, until discharged by the payment of the whole debt of Fisk, as established by the decree. By reason of that lien, complainant alleged that he had an interest in paying the amount due upon his two notes, and that, by the payment of the amount due upon them to the Quitmans, he was subrogated of right, by operation of law, to all the rights of the Quitmans to those two notes and the mortgage securing them, as well as by the express subrogation alleged in the original bill.

March 7, 1885, Lovell answered, averring as follows: When Fisk purchased the plantation, as aforesaid, he was not acting for himself, but for complainant, who was the real purchaser and furnished the funds to make the cash payment at that time; that shortly after that purchase complainant called upon the attorneys for the Quitmans several times, and acknowledged and claimed that he was the real purchaser of the plantation, and, as such, promised and bound himself to take up and pay the notes given in part payment therefor, and did pay at maturity the first of those notes with his own funds. About the time of the maturity of the second note, the complainant instituted a suit against Fisk on the equity side of the court below, in which he claimed to be the real owner of the plantation, and to have been the purchaser of it, instead of Fisk, who illegally took the title in his own name, and was all the time acting as complainant's agent, having paid the cash part of the purchase and the first note with complainant's money; and that complainant had promised the Quitmans to pay them the balance and was ready to do so. A final decree was rendered in that suit upon the pleadings and proofs, adjudging complainant to be the real owner of the plantation, and finding the matters and things set forth in his bill in that suit to be correct. Prior to the institution of that suit complainant took possession of the plantation as sole owner thereof, and

pending that suit caused himself to be appointed receiver thereof, and continued in the possession thereof, cultivating the plantation and disposing of the crops raised thereon for his own sole and exclusive benefit, accounting to no óne therefor. Fisk abandoned the plantation about that time, has never returned, never contested that suit, and never afterwards set up any claim to. the plantation. Fisk, at the time of the purchase of the plantation and up to the date of the acts complained of in that bill, was a man in the full confidence of complainant, entrusted with ample funds and credit, but without means of his own, either at that time or since. Complainant was a *bona fide* owner of the plantation from the date of that sale ; and the Quitmans did not sell the two notes to him, as he alleges, but accepted payment thereof from him, as the real obligor thereof. Complainant instigated the suits on the mortgage notes, and then bought them in, and by agreement with the Quitmans was subrogated to all of the Quitman's rights as against Fisk, solely in order to aid him in his suit against Fisk, he having advised the Quitmans that Fisk had been acting only as his agent in the transactions ; and such subrogation was taken by complainant to be used only in case he should fail in his equity suit with Fisk. Complainant was, and had been for a long time, in possession of the plantation when it was sold in the foreclosure suit of the Quitmans, and, having full knowledge of all those proceedings, consented thereto, and in fact requested the institution of the proceedings, and was present at the sale, stating that he was desirous of having some third person purchase the plantation, as he was unwilling to own it longer.

The answer further denied that complainant bought the two notes of the Quitmans ; averred that he acquired no right to the proceeds of the sale of the mortgaged property, but on the contrary continued to owe the Quitmans, as before, on the remaining notes of the series, the difference between the amount of them and the proceeds of the sale ; alleged that those two notes were extinguished by his payment thereof, so far as the Quitmans and the plantation were concerned, and that the mortgage, as to them, was also extinguished by those proceed-

ings; and further set up that the Quitmans never became liable to complainant in any manner for any amount, by reason of those proceedings, nor did he thereby acquire any lien or privilege upon the plantation. It was then alleged that, on the 17th of February, 1876, the defendant purchased the plantation from its then owner, Eliza A. Quitman, free and unencumbered with any demand or claim of the complainant or of any one else; that at that time there was no inscription of any mortgage or privilege against the property in the name of any one, and none could exist against the defendant, because he was a third person, within the meaning of art. 176 of the constitution of the State; that the notes which the complainant seeks to collect, having been dated January 31, 1870, and made payable in one and two years from date, respectively, were barred by prescription of five years; that the mortgage securing those notes having been executed January 21, 1870, lapsed and expired and became prescribed under the laws of the State January 21, 1880, and was therefore extinguished and of no effect, as it had never been reinscribed; and that by virtue of the foreclosure proceedings instituted by the Quitmans, upon one of the notes, the mortgage became extinguished.

The defendant Lovell, by way of cross-bill, then set up (1) That by reason of the facts set forth in the foregoing answer, and of the promises made by the complainant to the Quitmans, as therein set forth, complainant became liable for the payment of the whole of the purchase price of the plantation represented by the notes given by Fisk; that complainant, while in possession of the plantation as owner of it, committed great waste thereon, by destroying and injuring the fences, buildings, out-buildings, fixtures and improvements thereof, and removed therefrom all the movable property which was there when the sale was made by the Quitmans to Fisk, for the benefit of an adjoining plantation owned by him, and greatly depreciated the value of the plantation by reason of improper cultivation and business methods, so that it did not sell for a sufficient sum to pay the mortgage under which the foreclosure was made, as it otherwise would have done. Wherefore complainant is liable to and justly owes the defendant Lovell,

as executor of Eliza A. Quitman, the difference between the amount of the unpaid notes, with interest up to the date of the sheriff's sale, to wit, May 1, 1874, and the sum of $10,447.05, the net proceeds of that sale, with interest at eight per cent thereafter until paid.

(2) That Eliza A. Quitman instituted a suit at common law in the court below against the complainant on March 3, 1880, to recover the amount of that difference, and obtained a judgment against him for that amount, which on the 12th of November, 1883, upon appeal, was reversed and ordered to be arrested by this court; and that prescription was thus interrupted, and did not run against this claim urged by the defendant during the pendency of those proceedings. The record in that suit was then referred to, and was made a part of the answer and cross-bill, and the amount for which that suit was brought was claimed as due defendant by complainant.

The prayer of the cross-bill was for an account, a judgment according to the allegations therein contained, and for other and further relief.

On the 4th of April, 1885, the complainant filed a demurrer, plea and answer to the cross-bill, specifically denying all the material allegations of it and pleading the prescription of one, five and ten years. He pleaded the decision of this court in the suit brought by Eliza A. Quitman against him as an estoppel against her and all those claiming under her in this proceeding, and averred that, having a lien upon the plantation, he had an interest to pay the notes of Fisk if he chose, though he was not at any time personally liable to the Quitmans, and, having paid the two notes set forth in his bill, he was entitled to them, as owner, and was subrogated to the mortgage securing them. He further denied that he took the subrogation made by the Quitmans under an agreement or understanding that it should take effect only against Fisk, and not against the Quitmans and the plantation, but averred that he took it without any restrictions or limitations, for all it was worth under the law. He averred further that the complainant in the cross-bill had been sued individually, as third possessor of the premises in dispute, and not as executor of the Quitmans or of

either of them, and that he owned the property personally, and not as executor, and therefore could not maintain his cross-bill, in his capacity as executor.

Fisk was never found and never appeared. On the 28th of May, 1886, upon motion of the attorneys for complainant, suggesting that he had for a valuable consideration transferred to George D. Cragin, Jr., all his interest in this suit, and to the subject matter thereof, with full subrogation to his rights in the premises, it was ordered that the latter be subrogated as complainant, with authority to prosecute and carry on the suit in his own name. A great deal of testimony was adduced on both sides, and on the 12th of June, 1886, the following decree was entered:

"This cause came on to be further heard at this term upon the complainant's bill and the cross-bill of W. S. Lovell, executor of the last will and testament of Eliza A. Quitman, deceased, and the evidence adduced by the parties, and was argued by counsel; whereupon, and in consideration thereof, it was ordered, adjudged and decreed as follows:

"1st. That the complainant purchased the two notes sued upon, and was subrogated expressly as to one, and by operation of law as to the other, to all the rights of action thereon, including the mortgage executed by Orlando P. Fisk to secure the same, as alleged in the complainant's bill, and is entitled to the relief prayed.

"2d. That this cause be referred to J. W. Gurley, master, to take an account of the amount due the complainant on said notes and mortgage, and report the same to this court as soon as practicable.

"3d. It is further ordered and decreed that said cross-bill be dismissed. And further proceedings are suspended until the coming in of the master's report."

On the 14th of June, 1886, the master filed his report, in which he found that, as the sum realized by the Quitmans from the mortgage sale was retained by them, and as they were the holders of six of the unpaid notes and complainant of two, therefore complainant was entitled to one-fourth of the net proceeds of the sale, with interest to June 10, 1886, at

seven per cent, and also one-fourth of the attorneys' fees, in all, $4830.64.

June 15, 1889, a final decree was rendered in accordance with the report of the master; and it was further decreed that, in case the amount thus found due should not be paid within sixty days, the property should be sold to pay that sum; and a personal judgment was also entered against Lovell for any amount left over, in case the property should not sell for the amount found due and the costs.

An application for a rehearing having been denied, Lovell brought this appeal.

The assignments of error are that the court erred: (1) In refusing to maintain the defendant's plea of prescription of five years to the notes sued on. (2) In refusing to maintain his plea of prescription of ten years to the mortgage sued on. (3) In refusing to maintain his plea that the mortgage was extinguished by the sale of the plantation under the foreclosure proceedings taken by the Quitmans. (4) In refusing to maintain his plea on the ground that he was a third person purchasing without notice. (5) In decreeing that the complainant purchased the two notes sued upon, and was subrogated expressly as to one, and by operation of law as to the other, to all the rights of action thereof, including the mortgage executed by Fisk to secure them, as alleged in his bill, and is entitled to the relief prayed. (6) In dismissing the defendant's cross-bill.

A motion to dismiss the appeal has been filed, and associated with it is a motion to affirm. The first of these motions is based upon the ground that the amount in dispute, as determined by the judgment rendered, is but $4830.64, which is less than the amount required to give us jurisdiction. It is then argued that the amount claimed in the cross-bill cannot be added to this amount so as to give jurisdiction, nor can that amount be considered by itself for that purpose, 1st, because the cross-bill asserts no claim on the part of Lovell in his own behalf, but only as executor of Eliza A. Quitman, deceased, while the original bill was brought against him personally, as third possessor of the property; and, 2d, because the subject

matter of the cross-bill, to wit, the equitable claims of the Quitman estate, of which Lovell was executor, against the complainant, are distinct and separate from the subject matters in the original bill. These two grounds upon which the motion rests are negatived by the express averments of the bill itself, which are that the Misses Quitman, " having retained the price of said sale under said foreclosure, became and were liable to your orator for the full amount then due upon the notes held by him, and all interest, costs and attorneys' fees accrued thereon, which amount remained secured by lien and privilege upon all said property, and still so remains, the same still remaining wholly unpaid. . . . And your orator avers that . . . more than thirty days before filing this bill, he notified the said Lovell, executor as aforesaid, that he was the holder and owner of said notes purchased by him as aforesaid, and demanded payment of the amount due thereon," etc. And the prayer of the bill was " that an account may be taken under the direction of this honorable court, before one of the masters thereof, or otherwise, as the court may direct, of the amount due your orator, in principal, interest and costs, upon the two notes hereinbefore described, and acquired by him by purchase as aforesaid; that he be decreed to have a first lien and privilege upon the lands and premises herein described, for the amount so found to be due, to date from said 2d day of May, 1874; that said defendants be decreed to pay the same, together with all your orator's costs and charges in this behalf sustained, (including attorneys' fees at 2 per cent upon the sum due him,) within some short day to be fixed by the court, and, in default thereof, that said mortgaged property be seized and sold under the order and decree of this honorable court, and that your orator be paid out of the proceeds of such sale, and that, if the same be insufficient to pay him, he have execution for the balance, and that his right to recover any deficiency from the estate of said Eliza A. Quitman be reserved to him," etc.

To these averments the cross-bill was directly responsive, and the matter therein set up as equitable claims of the

Quitmans against Cragin- were directly connected with the transaction-which he alleges, in large part, as the gravamen of his complaint. It is true that the bill also presents a claim against Lovell as the possessor of the property to which the complainant alleged he had a lien, but that only shows the alternative nature of the relief sought. The original bill was an hypothecary action, which, by article 61 of the Louisiana Code of Practice, is thus defined: " An hypothecary action is a *real* action which the creditor brings against the property which has been hypothecated to him by his debtor, in order to have it seized and sold for the payment of his debt." In the original bill, complainant prayed that the mortgaged property be sold to pay his demand, and if the proceeds of that sale be insufficient for that purpose that he then "have execution for the balance, and that his right to recover any deficiency from the estate of Eliza A. Quitman be reserved to him."

It is thus observed that the action was against the property itself, very much of the same nature as a suit *in rem* at common law; and it was necessarily brought against Lovell because, by coincidence, he had possession of it. The judgment against him, while in one aspect of it a personal judgment, was also a judgment against the property; and it would seem that the claim in the cross-bill, which is one growing out of, or appurtenant to, the property, was really incident to the suit, as it was a part of the original transaction of the sale and mortgage of the Live Oak plantation, out of which the claim in the original bill is derived. The duty of Lovell, as executor of the estate of Miss Quitman, to protect the property, required him to set up the defence in the cross-bill, as a set-off against the claim and the prayer of the complainant's original bill. We think, therefore, the amount claimed by the cross-bill can properly be taken into consideration in determining the jurisdiction of this court; and, as that amount is more than the jurisdictional amount, the motion to dismiss is denied.

For reasons that will be made manifest as we proceed in our discussion of the case upon its merits, the motion to affirm is also denied.

Assuming for present purposes, that the facts relative to the purchase by complainant of the two notes which form the basis of his claim, and also to the subrogation, are as found by the court below, we pass to the assignment of errors. It is clear that if this were an original suit directly on the notes, to foreclose the mortgage, it could not be maintained, because, under the provisions of the Louisiana law the notes would be prescribed, and the mortgage would be perempted. These notes were both dated January 31, 1870, and matured February 3, 1872, and February 3, 1873, respectively. They were, therefore, prescribed February 3, 1877, and February 3, 1878, respectively, by virtue of art. 3540 of the Civil Code, which is as follows: "Actions on bills of exchange, notes payable to order or bearer, except bank notes, those on all effects negotiable or transferable by endorsement or delivery, and those on all promissory notes, whether negotiable or otherwise, are prescribed by five years, reckoning from the day when the engagements were payable." The mortgage given to secure these notes was recorded February 12, 1870, and, never having been reinscribed, became perempted in ten years from that date, by virtue of art. 3369 of the Civil Code, which is as follows: "The registry preserves the evidence of mortgages and privileges during ten years, reckoning from the day of its date; its effect ceases, even against the contracting parties, if the inscriptions have not been renewed before the expiration of this time, in the manner in which they were first made."

It is also true that a mortgage, under the law of Louisiana, is indivisible, (art. 3282, Civil Code;) and that the foreclosure of it has the effect to extinguish it, even if all the parties to the mortgage have not been made parties to the foreclosure proceedings. *Parkins* v. *Campbell*, 5 Martin, La. (N. S.) 149; *Pepper* v. *Dunlap*, 16 La. 163.

It is insisted, however, by the complainant that this action is brought not on the aforesaid notes and mortgage directly, but to enforce an obligation growing out of the foreclosure and sale of the mortgaged property — an obligation on the part of the purchaser at that sale to pay to the complainant,

out of the net proceeds of the sale, his *pro rata* share thereof. In other words, the contention is, that the net proceeds of the sale should have been divided ratably among the holders of all the unpaid notes secured by the mortgage; and that, as that was not done by the Quitmans, who purchased the property, an obligation arose on their part to pay the different instalments of the debt, which obligation followed the land, and was not prescribable until at least ten years from the date of the sale. Certain provisions of the Civil Code and the Code of Practice, as well as a number of decisions of the Supreme Court of the State, are relied upon to support this view, all which we shall now consider.

The following articles of the Code of Practice relate to the general question involved :

"ART. 679. When there exists a mortgage or privilege on the property put up for sale, the sheriff shall give notice, before he commences the crying, that the property is sold subject to all privilege and hypothecations, of whatsoever kind they may be, with which the same is burthened, and with the condition that the purchaser shall pay in his hands whatever portion of the price for which the property shall be adjudicated may exceed the amount of the privileges and special mortgages to which such property is subject."

"ART. 686. When a seizing creditor has a privilege or a special mortgage on the property seized, for a debt of which all the instalments are not yet due, he may demand that the property be sold for the whole of the debt, provided it be on such terms of credit as are granted to the debtor by the original contract for the payment of such instalments as are not due."

"ART. 706. But when the property sold is subject to privileges or special mortgages in favor of other persons besides the suing creditor, the sheriff shall require from the purchaser, and he shall be compelled to deliver to the creditor, whether the sale be made for ready money or on credit, only the surplus of price beyond the amount of the privileges or special mortgages, if there be any surplus."

"ART. 709. The hypothecary action lies against the pur-

chaser of a property seized, which is subject to privileges or mortgages in favor of such creditors as have said privileges and mortgages, in the same manner and under the same rule and restrictions as are applicable to a third possessor of a mortgaged property."

One of the leading cases relied on is *Pepper* v. *Dunlap*, 16 La. 163, 169, 170, 171. In that case the holders of the second and third notes of a series of seven, (the first having been paid at maturity,) concurrently secured by a mortgage on certain real and personal property, obtained an order of seizure and sale, on their mortgage against the mortgaged property, praying in their petition that it be sold to satisfy all the notes, but on a credit to meet those not due. The order was issued by the lower court, and the defendant appealed directly to the Supreme Court. After discussing some incidental questions, the court said: " The mortgage is in its nature indivisible, and prevails over each and every portion of all the immovables subjected to it. Louisiana Code, art. 3249 (now 3282). If so, how can property subject to a special mortgage be sold to satisfy a part of the debt, the whole of which the mortgage secures; would the purchaser acquire such title as he is legally entitled to, and would he not, on the contrary, have to run the danger of being disturbed for the payment of the balance of the debt, although the price of his purchase would be the full value of the property? Such proceedings would, in our opinion, be met with such difficulties and inconveniences that an injury must necessarily result to either of the parties, and we cannot sanction the doctrine that the creditor of part of a debt secured by a special mortgage, for which notes have been given, may be allowed or must be restrained to seeking and obtaining the satisfaction of his claim out of the sale of the property mortgaged for the whole, without any regard to the right of those who may be the holders of the other notes, and with an entire disregard of the consequences as to the purchaser of the property. Our laws being silent on this subject, we must reason by analogy." And after discussing the various articles of the Code of Practice relating to this subject, the court went on to say: " It is..

clear, then, from these articles, that the purchaser of the property is *personally* bound for the surplus of the adjudication, still secured by special mortgage on the property sold, and that he holds said surplus in his hands, subject to the claim or call of the creditors who had the inferior mortgages, and who had nothing to do with the sale from which said surplus proceeded, and that when it is demanded of him, if he does not pay it, he is subject to being proceeded against in the same manner as if he were a third possessor. This, it seems to us, would be a safe and proper rule to adopt in a case like the present, where the different instalments are secured by the same mortgage, and where the rights of the creditors are of equal dignity, and we cannot see any good reason why, in the absence of any law, it should not be adopted. . . . We think, therefore, that we may safely establish, as a rule of practice, that when a seizing creditor only sues for such instalments of a debt secured by privilege or special mortgage as are due, the property so mortgaged is to be sold for the whole of the debt, on such terms of credit as are granted by the original contract, although such creditor does not show that the subsequent instalments belong to him, or that he is the holder of all the notes mentioned in the contract of mortgage, and that it suffices that the several instalments, as are not due, be mentioned in the petition."

*Johnson* v. *Duncan*, 24 La. Ann. 381, resembles the case at bar in some respects. In that case the plaintiff was the owner and holder of one of a concurrent series of notes secured by mortgage on a plantation. The holder of the other notes of the series foreclosed the mortgage, and the property was sold to the defendant for an amount not quite sufficient to satisfy the whole indebtedness. The court said: "The defendant was bound to retain in his hands for the benefit of the plaintiff's note the *pro rata* of the price coming thereto by law, and to pay the same with interest when demanded. We do not think he was bound for any more than this, but judgment to this extent may be properly given under the pleadings and evidence; and this view renders it unnecessary to pass upon many technical points presented in the argument. The .

principal defence urged is that of peremption. The defendant contends that the mortgage was first recorded in 1859, and was not reinscribed, and that the plaintiff, whose suit was not instituted till 1871, lost his rights against defendant by peremption. This, we think, an error. The obligation of defendant springs from his purchase, and the duty of retaining in his hands the proportion of price coming to a concurrent mortgage note not embraced in the judgment under which the sale was made, and to deliver such proportion to the holder of such note. An hypothecary action is provided against him. As to him, the mortgage of the concurrent creditor requires no reinscription, for he has assumed the debt to the extent of its proportion of the purchase money, which he must retain."

In *Soniat* v. *Miles*, 32 La. Ann. 164, 166, the court, quoting from the syllabus in *Parkins* v. *Campbell*, 5 Martin, N. S. 149, said: "When a debt, secured by mortgage, is due in several instalments, and the assignee of the second causes the property to be seized and sold, the sale gives a complete title to the purchaser, and the creditor of the first instalment cannot seize the property in his hands, unless *he alleges and proves* that the sale is an absolute nullity, or unless he proceeds against that purchaser, by the hypothecary action, for any proportion of the price to which he may be entitled, under a prior or concurrent mortgage."

These authorities establish the principle that the holder of one or more of a series of notes secured by a concurrent mortgage is entitled to a *pro rata* share in the net proceeds arising from the sale of the mortgaged property at the suit of a holder of any of the other notes, and that an hypothecary action lies to enforce such claim. And one of them, *Johnson* v. *Duncan*, lays down the principle that, as regards the purchaser at the foreclosure sale, no reinscription of the mortgage is necessary, because he has assumed, by his purchase, the payment of the proportionate share of the debt. And the reasoning of the court in that case inevitably leads to the conclusion, that the basis of the hypothecary action provided by the Code in such cases is the obligation which the law casts upon the pur-

chaser to pay the *pro rata* share of the debt represented by the notes that were not the subject of the foreclosure suit.

But the other proposition advanced by the complainant, that the right of action is not prescribable until at least ten years from the date of sale, is not supported by any of these authorities, or by any that have been brought to our attention, or that we have been able to find.

In *Smith* v. *Johnson*, 35 La. Ann. 943, the court held, as stated in the syllabus of the case, that "the hypothecary action against the third possessor is not barred by the prescription of ten years, when the principal obligation has been kept alive, and the mortgage securing it has been properly inscribed and reinscribed."

In *Gentes* v. *Blasco*, 20 La. Ann. 403, 405, the court said : "We consider the hypothecary action as accorded and defined by arts. 61, 62 and 63 of the Code of Practice, to be an original action. It is declared to be a real action, and that it follows the property in whatever hand it may be found. What is said in *Kemp* v. *The Heirs of Cornelius*, 14 La. Ann. 301, in regard to the ten years' prescription being applicable, whenever it becomes necessary to institute a separate and distinct action from the one in which the judgment was rendered, seems not to apply to the hypothecary action. In that case we have already seen the action was personal. We do not find in our Code any period expressly fixed for the prescription of the hypothecary action. And the reason seems to be that its duration is contingent upon the existence of the right from which it springs."

Applying this principle to the case at bar, it is to be observed that the right from which the hypothecary action springs was the right of the complainant to his *pro rata* share of the net proceeds of the sale of the mortgaged property ; or, in other words, the hypothecary action is based upon the obligation on the part of the purchasers to pay to him that amount — an obligation which, as before stated, follows the land into the hands of third persons. We have also seen that, according to the rule announced in *Johnson* v. *Duncan*, as to the purchaser at the sale, no inscription of the obligation was neces-

sary. But as to third persons, such is not the case. Upon this point the Louisiana constitution of 1868 and the constitution of 1879 are positive and peremptory. Article 123 of the constitution of 1868 is as follows: "The general assembly shall provide for the protection of the rights of married women to their dotal and paraphernal property, and for the registration of the same; but no mortgage or privilege shall hereafter affect third parties, unless recorded in the parish where the property to be affected is situated. The tacit mortgages and privileges now existing in this State shall cease to have effect against third persons after the first day of January, eighteen hundred and seventy, unless duly recorded. The general assembly shall provide by law for the registration of all mortgages and privileges."

Article 176 of the constitution of 1879 provides: "No mortgage or privilege on immovable property shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time as is now or may be prescribed by law, except privileges for expenses of last illness, privileges for taxes, State, parish, or municipal; *Provided,* Such privilege shall lapse in three years."

The obligation in such case partakes of the nature of a judicial mortgage; and to be effective as to third persons it was necessary that it be inscribed with the recorder of mortgages. The judgment of the court from which the aforesaid obligation arose did not give a lien until so registered. *Hanna* v. *Creditors,* 12 Martin, 32; *Adle* v. *Anty,* 5 La. Ann. 631; *Ford* v. *Tilden,* 7 La. Ann. 533; Arts. 3322 and 3342, Civil Code; Art. 123, Constitution of 1868; Art. 176, Constitution of 1879.

*Third persons* are understood to be "all persons who are not parties to the act or the judgment on which the mortgage is founded." Art. 3343, Civil Code. And in that class must be placed the defendant Lovell, considered in his individual capacity, as possessor of the property; for his character as executor and his obligation as such did not exist until after he became such purchaser. As to him, the obligation aforesaid was of no effect without being registered, as required by the laws of Louisiana; and no action would lie to enforce it.

This principle was applied by the Supreme Court of Louisiana in *Delony* v. *George*, 20 La. Ann. 216. That case is well stated in the syllabus, as follows: " A having sold a tract of land to B, retained a mortgage thereon for the unpaid portion of the price, with the *pact de non alienando* in the act of sale. B subsequently sold the same tract of land to C, without an assumption in the act of sale of the existing mortgage. A lost his mortgage by allowing ten years to elapse without reinscription: *Held*, that C, the third purchaser, held the property free from the mortgage of A, after the lapse of ten years from its inscription, notwithstanding the *pact de non alienando* contained in the act of sale from A to B, and that the third purchaser could successfully enjoin the order of seizure and sale taken out by A."

It is to be observed that our discussion of the case hitherto has been upon the theory that the court below was correct in finding that the complainant purchased the two notes in suit and was subrogated to all the rights in and to them enjoyed by the Quitmans. Indeed, the argument of both parties is largely based upon that theory, and the contrary view is presented only incidentally in connection with the issue raised by the cross-bill. In fact, however, it makes no substantial difference in our conclusion on the issues presented by the original bill whether that theory, or, more properly speaking, that finding of fact, be correct or not, as that is the most favorable view of the matter to the complainant that can be taken; and, in any view of the case, his bill cannot be sustained. The decree of the court below in that respect is erroneous and should be reversed.

With respect to the cross-bill, we are of the opinion the decree below was correct, although the grounds upon which the court based its decree are not stated. One of the causes of action alleged in the cross-bill is for damages arising from the alleged wrongful acts of the complainant with respect to removing personal property from the plantation while he had possession of it, and for waste committed by him about the same time. Under the law of Louisiana such acts on the part of the complainant would be considered quasi-offences, and

would, therefore, be prescribed by one year. Art. 3536, Civil Code.

But, furthermore, as stated by the attorney for appellant, the cross-bill "is for the same cause of action" as was originally brought in *Cragin* v. *Lovell,* in which judgment was rendered against Cragin in the court below, but on appeal to this court was reversed and ordered to be arrested because the petition set up no cause of action against Cragin, the complainant herein. 109 U. S. 194. The cause of action in that case was the same as in this, and the parties are the same; and while the plea of *res adjudicata* may not be strictly applicable, because the judgment in that cause was simply arrested and did not, therefore, adjudicate upon the merits of the case, yet a comparison of the cross-bill here and the petition in that case discloses that they are almost, if not entirely, identical, so far as the substance of both is concerned. And, as we held there that "the petition shows no privity between the plaintiff and Cragin," and "alleges no promise or contract by Cragin to or with the plaintiff," it would seem that the same rule should be applied with reference to this cross-bill, even though it is ostensibly an equity proceeding. *Ballance* v. *Forsyth,* 24 How. 183; *Life Insurance Co.* v. *Bangs,* 103 U. S. 780; *Gould* v. *Evansville & Crawfordsville Railroad,* 91 U. S. 526, 534; *Alley* v. *Nott,* 111 U. S. 472, and cases cited.

> *The decree of the court below sustaining the complainant's bill was erroneous, and to that extent is reversed; and with respect to its dismissal of the cross-bill it was correct, and to that extent is affirmed; and the case is remanded to that court with a direction to dismiss the bill with costs.*