**FIRST GUARANTY BANK & TRUST COMPANY, as Successor Trustee U/T/A Dated May 3, 1993, wherein Mildred Frances McQueen was Grantor, Plaintiff,**

v.

**Ginger M. REEVES, Defendant, Counter–Claimant.**

**Billy Wilkins and Angela Dale Carr, individuals, Intervening Plaintiffs,**

v.

**First Guaranty Bank & Trust Company, as Successor Trustee U/T/A Dated May 3, 1993, wherein Mildred Frances McQueen was Grantor, Defendant in intervention.**

**No. 3:98–CV–1251–J–21A.**

United States District Court, M.D. Florida, Jacksonville Division.

Feb. 11, 2000.

Michael M. Naughton, Naughton Law Offices, Jacksonville, FL, Kevin Allan Schoeppel, Naughton & Schoeppel, Jacksonville, FL, for Billy Wilkins, Angela Dale Carr.

James L. Ade, Stephen D. Halker, Martin, Ade, Birchfield & Mickler, P.A., Jacksonville, FL, for 1st Guaranty Bank & Trust Company.

Michael M. Naughton, Naughton Law Offices, Jacksonville, FL, Kevin Allan

Schoeppel, Naughton & Schoeppel, Jacksonville, FL, for Ginger M. Reeves.

Gary L. Wilkinson, Law Office of Gary L. Wilkinson, Jacksonville, FL, for 1st Guaranty Bank & Trust.

### ORDER

NIMMONS, District Judge.

This cause comes before the Court *sua sponte.* The court has studied the parties' briefs addressing subject matter jurisdiction and has heard oral arguments. Upon due consideration, the Court determines, for the reasons set forth below, that it lacks subject matter jurisdiction over this case and remands the case to the state court from whence it came.

### I. Procedural History

The controversies surrounding the present case have a long and painful history in the state courts. First Guaranty Bank and Trust Company ("First Guaranty") is the trustee of a trust established by the late Mildred Frances McQueen, who died in 1993. During the probate of Mildred McQueen's estate, questions arose concerning the billing of an attorney for the personal representatives and the trust. First Guaranty filed an objection to the fees and thus began years of litigation in the Florida State courts, both at the trial and appellate court levels. The probate estate has now been closed.

When the dust of litigation had settled, First Guaranty sought to terminate the trust under Florida law because its value is under $50,000.00. Fla.Stat. § 737.407(2) (1999). When First Guaranty could not reach a settlement with the beneficiaries of the trust, it filed a complaint in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida for approval of the accounts and termination of the trust.

On December 22, 1998, the Defendant and the third party intervenors filed a Notice of Removal (Dkt.1) to this Court. They simultaneously filed the Defendant's answer and counterclaim (Dkt.4) and the

Intervenors' Motion to Intervene (Dkt.5). The Notice of Removal alleges jurisdiction based on diversity of citizenship. The Notice of Removal also states that the Defendant Reeves "incorporates her counterclaim which is in excess of $75,000.00 as against Plaintiff, Guaranty." The Notice further states, "That said action is a civil action for the distribution of a trust in an alleged amount less than $75,000.00, but Defendant, Reeves, claims is (sic) an amount in interest in excess of $75,000.00 prior to incorporation of Reeves (sic) counterclaim." (Dkt.1, ¶ 2).

Upon review of the parties' pretrial stipulation (Dkt.52), the Court became concerned that the amount in controversy in the Plaintiff's complaint was actually under $75,000.000 and that, consequently, the Court would not have subject matter jurisdiction over this case. *See* 28 U.S.C. § 1332(a). The Court questioned counsel regarding said issue during the pretrial conference held on February 2, 2000. (Transcript, Dkt.58). During the pretrial conference, Defendant and Intervenors admitted that the amount in controversy for the case was solely dependent on the amount stated in the Counterclaim (Dkt.4) and the Intervenors' Third Party Counterclaim (Dkt.26). The Court then ordered the parties to brief "the issue of whether a counterclaim can be considered by the Court in calculating the amount in controversy requirement of 28 U.S.C. § 1332." (Dkt.57). Defendant's and Intervenors' Brief Regarding Issue of Jurisdiction of Federal Court (Dkt.59) admits that Plaintiff's claim "does not exceed the jurisdictional requirements of 28 U.S.C.A. § 1332(a)." (Def. brief at 1).

## II. Subject Matter Jurisdiction

### A. Introduction

There is no Supreme Court[1] or Eleventh Circuit case addressing the issue of whether a counterclaim may be used by a court in calculating the amount in controversy for purposes of determining subject matter jurisdiction where a case has been removed from a state court. Likewise, there is no such case law in the other circuits.[2] There is, however, some circuit case law dealing with the issue of considering the counterclaim for determining the amount in controversy when the plaintiff has originally filed in the federal court.

Substantial case law also exists from district courts around the country dealing with the current issue. Apparently, this controversy has been present since before the Federal Rules of Civil Procedure. 14B Charles Alan Wright, Arthur R. Miller,

---

**1.** In *Lovell v. Cragin*, 136 U.S. 130, 10 S.Ct. 1024, 34 L.Ed. 372 (1890), the Supreme Court did determine that "the amount claimed by the cross-bill can properly be taken into consideration in determining the jurisdiction of this court; and, as that amount is more than the jurisdictional amount, the motion to dismiss is denied." 136 U.S. at 142, 10 S.Ct. at 1028. However, the Court did not discuss this determination, but merely stated its conclusion. This gives the present Court the impression that the point was not contested. *See Rudder v. Ohio State Life Ins. Co.*, 208 F.Supp. 577, 579 (E.D.Ky.1962). Moreover, it was not the jurisdiction of the district court that was challenged. The Court was ruling on its appellate jurisdiction. *See* 136 U.S. at 140, 10 S.Ct. at 1027 (stating that the motion to dismiss the appeal was based "upon the ground that the amount in dispute ... is less than the amount required to give us jurisdiction"). At the time of the dispute, the jurisdictional amount for the district courts was

only $500.00. 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3701. *See also* 208 F.Supp. at 579. Based on these distinguishing factors, the subsequent Congressional revisions of the removal statutes, and the subsequent Supreme Court decisions mandating strict construction of the removal statutes, this Court concludes that the above referred expressions from *Lovell* are not controlling with respect to the issue at hand.

**2.** The dearth of circuit precedent on this issue can most probably be explained by the appellate court's lack of jurisdiction to review orders of remand and the district courts' lack of jurisdiction to reconsider orders of remand. *See In re Decorator Indus., Inc.*, 980 F.2d 1371, 1373 (11th Cir.1992); *In re Surinam Airways Holding Co.*, 974 F.2d 1255, 1257 (11th Cir.1992); *Harris v. Blue Cross/Blue Shield of Ala., Inc.*, 951 F.2d 325, 326–27, 330 (11th Cir.1992).

Edward H. Cooper, *Federal Practice and Procedure* § 3706 (3d ed.1998). Through the years, the district courts have decided both ways on the issue—either allowing or disallowing consideration of the counterclaim. *See id.* (collecting cases). The majority of courts, however, have held that the counterclaim may not be used to calculate the jurisdictional amount in controversy when a defendant removes a case from a state court. *See id. See also Spectacor Management Group v. Brown,* 131 F.3d 120, 125 (3d Cir.1997) ("[T]he cases to which Brown points appear to present the majority view that inclusion of counterclaims should not be permitted in the removal context"). Since opinions from the other district courts are persuasive—and not binding—the Court will look to established Eleventh Circuit precedent of jurisdictional principles in its determination of which is the proper view.

**B. Established Principles of Subject Matter Jurisdiction**

■ Federal courts have limited jurisdiction. *Burns v. Windsor Ins. Co.,* 31 F.3d 1092 (11th Cir.1994). "They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of South Ala. v. American Tobacco Co.,* 168 F.3d 405, 409 (11th Cir.1999). A district court which exercises jurisdiction it does not have "unconstitutionally invades the powers reserved to the states to determine controversies in their own courts" and "offends fundamental principles of separation of powers." *Id.* at 410.

■ Because the subject matter jurisdiction of a federal court is constitutional and statutory in nature, it cannot be waived or otherwise conferred upon the court by the parties. *University of South Ala.,* 168 F.3d at 410. *See also Hurt v. Dow Chemical Co.,* 963 F.2d 1142, 1146 (8th Cir.1992) ("subject-matter jurisdiction is not a mere procedural irregularity capable of being waived"). Even if neither of the parties objects to a court's subject matter jurisdiction, the court may—indeed *should*—inquire into its jurisdiction *sua sponte* whenever it maybe lacking. 168 F.3d at 410. "[R]emoval jurisdiction is no exception to a federal court's obligation to inquire into its own jurisdiction." *Id.* "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to the state court. 28 U.S.C. § 1447(c). This is true regardless of the existence of other motions pending before the court. 168 F.3d at 411.

■ The intent of Congress in passing the removal statutes was to restrict federal court jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 109, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941). Moreover, constitutional implications demand that the removal statute be strictly construed. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *See id.* (quoting *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934)). Because of the significant federalism concerns, any doubts about jurisdiction are to be construed in favor of remand. *Burns,* 31 F.3d at 1095. In *Burns,* the Eleventh Circuit explained that different considerations come into play when determining removal jurisdiction as opposed to original jurisdiction. "[U]nlike the rules applied when plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly." *Burns,* 31 F.3d at 1095.

■ Not only must a court construe the removal statute strictly, but it must also ensure that its application is uniform. In its reasoning under *Shamrock,* the Supreme Court stated that the federal removal statute is nationwide in its application and was intended to be applied uniformly. *See* 313 U.S. at 104, 61 S.Ct. at 870. The Court also explained that the removal statute established "its own

criteria, *irrespective of local law*, for determining in what instances suits are to be removed from the state to the federal courts." *See id.* (emphasis added). Based in part on this strong mandate, the Eleventh Circuit has declared, "We are unwilling, without congressional guidance, to construe the removal statute in such a way that it would expand federal court jurisdiction or promote inconsistent application of the removal rule." *Burns*, 31 F.3d at 1097.

The Eleventh Circuit has also spoken of the rights of the parties in the context of removal. Most significantly, the Court has held that "[w]hile a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim." *Burns*, 31 F.3d at 1095. "Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing." *Id.* For this reason, a removing Defendant has the burden of proving the existence of subject matter jurisdiction in federal court. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir.1996).

## C. Consideration of a Counterclaim

In considering district court cases which have dealt with the issue at bar, the Court looks for guidance to the decisions of the other district courts within the Eleventh Circuit. The Court has been able to locate only five decisions which deal with cases removed from state court. The first case is *Collins v. Faucett*, 87 F.Supp. 254 (N.D.Fla.1949). In *Collins*, the district court held that the ambiguity in the removal statute was removed by the 1948 revisions to Title 28. The court held:

> It seems obvious to this court that the members of Congress ... were fully aware of the conflict in the decisions of the courts on this question and, in fact, they say so in the Revisor's Notes to Section 1441. If Congress had desired to grant to a defendant the right to

remove a case from a State court to a Federal court based solely upon a counterclaim it could have, and undoubtedly would have, done so in clear unambiguous language.

87 F.Supp. at 255. The conflicting decisions of the various district courts now show that what seemed obvious to the *Collins* court was not as obvious to others. Nevertheless, this Court finds instructive the point made by the *Collins* court: members of Congress were fully aware of the conflict in decisions prior to the 1948 amendments to the Federal Rules of Civil Procedure. This Court agrees with the observation that if Congress had desired to grant defendants the right to remove a case based solely upon a counterclaim it would have done so explicitly.

The next case on point is *Continental Carriers, Inc. v. Goodpasture*, 169 F.Supp. 602 (M.D.Ga.1959). In *Goodpasture*, the court noted that it was settled that a *plaintiff* may not remove a case to federal court based upon the amount sought in the defendant's counterclaim.[3] 169 F.Supp. at 603. It also noted that a permissive counterclaim will not be considered in calculating the amount in controversy. *Id.* (citing *Merchants' Heat & Light Co. v. James B. Clow & Sons*, 204 U.S. 286, 27 S.Ct. 285, 51 L.Ed. 488 (1907)). Only in the case of a compulsory counterclaim did a split in decisions occur.

The *Goodpasture* court opined that a compulsory counterclaim *should* be considered in determining the amount in controversy in order to prevent "a race for jurisdiction between the parties." 169 F.Supp. at 603. Nevertheless, the *Goodpasture* court refused to allow consideration of the counterclaim because it found that there was no basis in law. *Id.* at 603–04. The court in *Goodpasture* reiterated the principle that the removal statute must be strictly construed. Moreover, the court noted, "to allow removal in [only cases where the counterclaim is compulsory] would be to

---

**3.** Where a plaintiff files his complaint in a state court and the defendant later files a counterclaim for over the jurisdictional amount, the Supreme Court has held that the

*plaintiff* may not then decide to remove the case to the federal court. *See Shamrock*, 313 U.S. at 109, 61 S.Ct. at 872.

make the Federal removal practice dependent on state court procedure ... and would effectively preclude that orderly procedure and uniformity of practice which has been the goal of all removal acts." 169 F.Supp. at 603.

This Court agrees with the reasoning in *Goodpasture.* Allowing jurisdiction in cases where a counterclaim is compulsory, but disallowing it in cases where a counterclaim is permissive would inject the divergent law of fifty states into federal removal jurisprudence. This result would be contrary to the Congressional intent expressed in *Shamrock. See* 313 U.S. at 104, 61 S.Ct. at 870.

The Southern District of Georgia has also addressed the issue of considering the counterclaim in the amount in controversy in a removal situation. In *Coastal Air Serv., Inc. v. Tarco Aviation Serv., Inc.,* 301 F.Supp. 586 (S.D.Ga.1969), the plaintiff had originally filed a claim in the Municipal Court of Savannah, Georgia. The defendant then filed a counterclaim exceeding the municipal court jurisdictional limit of $1,000. The defendant then filed an equitable action in the county court to move the action there. At that point, the plaintiff removed the case to federal court. The plaintiff argued that, since the defendant had filed the equitable action in county court, the plaintiff had essentially been converted to a defendant and thus had the right to remove the case to federal court. The district court disagreed. Citing *Shamrock Oil & Gas Corp.* as authority, the court noted that a plaintiff may not remove a case to federal court based upon the amount claimed in the defendant's counterclaim. *Id.* at 587. The court explained that, despite the cross-action, the "posture of the litigation at the time of removal presented a case where the plaintiff was still Tarco and the defendant was still Coastal." *Id.* at 588. Moreover, the court explained that "Federal, not State, law determines who is plaintiff and who is defendant in removal cases." *Id.* (citing *Chicago, R.I. & P.R. Co. v. Stude,* 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317 (1954)). "A state procedural statute requiring compulsory counterclaims does not control the question of federal jurisdiction." 301 F.Supp. at 588. Based on this reasoning, the *Coastal* court remanded the case to the state court. *Id.*

This Court agrees with the reasoning in *Coastal.* It and *Shamrock* stand for the proposition that once a plaintiff, always a plaintiff. Likewise, once a defendant, always a defendant. In the instant case, the defendant was not converted into a plaintiff by filing a counterclaim. Thus, defendant's counterclaim may not be treated as a complaint for calculation of the amount in controversy.

The last two cases arose in the Middle District of Alabama. Both cases were decided in 1999. *See Conference Amer., Inc. v. Q.E.D. Int'l, Inc.,* 50 F.Supp.2d 1239 (M.D.Ala.1999), and *Hill v. Mony Life Ins. Co.,* 75 F.Supp.2d 1328 (M.D.Ala.1999). This Court agrees with the reasoning in both of these cases and finds persuasive Judge DeMent's memorandum opinion in the *Conference America* case.

In *Conference America,* as in the instant case, the plaintiff filed a claim in the state court for less than $75,000.00. 50 F.Supp.2d at 1240. The defendant removed the case to the federal court based on diversity jurisdiction and, on the same day, filed its answer and counterclaim in the federal court. *Id.* The court in *Conference America* found that because removal jurisdiction raises "significant federalism concerns," the removal statutes must be strictly construed. *Id.* at 1241. In accord with that viewpoint, all doubts about jurisdiction must be resolved in favor of remand to the state court. *Id.* The court also noted that the "Eleventh Circuit has explicitly stated that a court 'must look to plaintiff's claim to determine whether removal [is] appropriate.'" *Id.* (quoting *Burns,* 31 F.3d at 1095). It concluded that "[t]o consider Defendant's Counterclaim, therefore, would contravene the Eleventh Circuit's dictates as a counterclaim is not part of the plaintiff's complaint." *Id.*

The court in *Conference America* also distinguished *Premier Indus. Corp. v. Tex-*

as *Indus. Fastener Co.,* 450 F.2d 444 (5th Cir.1971) and *Liberty Mut. Ins. Co. v. Horton,* 275 F.2d 148 (5th Cir.1960), aff'd, 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). The court noted that both of those cases occurred in the context of original jurisdiction, not removal jurisdiction. 50 F.Supp.2d at 1241. Moreover, subsequent district court decisions within the Fifth Circuit have found the holdings of *Premier* and *Liberty Mutual* not to apply in the removal context. *Id.* at 1242. *Conference America* found the difference between original jurisdiction and removal jurisdiction to be significant because of the unique policy considerations inherent in removal jurisdiction. *Id.* at 1241. It reiterated that the "plaintiff is the master of his own claim;" that plaintiff's right to choose his forum is not on equal footing with the defendant's right to remove; and, unlike original jurisdiction, removal jurisdiction is construed narrowly. *Id.*

The court in *Conference America* concluded its analysis by stating that the Eleventh Circuit has expressed a clear mandate that it will not, without Congressional guidance, construe the removal statute "in such a way that it would expand federal court jurisdiction." *Id.* Therefore, the court held:

> [T]o permit consideration of counterclaims when determining the amount in controversy for removal jurisdiction would expand federal jurisdiction, contrary to the Supreme Court's interpretation of the legislative history and language of the statutes governing removal.

*Id.* (citing *Shamrock Oil,* 313 U.S. at 107, 61 S.Ct. 868, 85 L.Ed. 1214).[4]

The decision in *Hill v. Mony Life Ins. Co.,* 75 F.Supp.2d 1328 (M.D.Ala.1999), relies upon the same reasoning as the other cases cited above. The *Hill* court also noted that the reasoning of other courts that refused to consider the counterclaim in calculating the jurisdictional amount in the removal context was that a counterclaim is an event subsequent to the complaint. As such, it cannot be used in determining the amount in controversy. 75 F.Supp.2d at 1331.

This Court agrees with the analyses and conclusions of the other district courts of this circuit. Coupled with the strong mandate consistently expressed by the Eleventh Circuit against expanding federal removal jurisdiction, the Court is constrained to disregard the counterclaim in calculating the jurisdictional amount in controversy.

Both parties have cited a decision from the Third Circuit in support of this Court exercising jurisdiction. *See Spectacor Management Group v. Brown,* 131 F.3d 120 (3d Cir.1997). *Spectacor* held that, where a plaintiff files a claim in federal court and the defendant chooses to file a counterclaim against plaintiff in lieu of filing a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the defendant has placed the amount of the counterclaim in controversy and the court must consider it in determining jurisdiction under 28 U.S.C. § 1332(a). 131 F.3d at 125. Nevertheless, this Court does not feel that *Spectacor,* or similar cases[5], are persuasive authority.

---

4. Judge DeMent distinguished one of his prior decisions—*Progressive Specialty Ins. Co. v. Nobles,* 928 F.Supp. 1096, 1098 (M.D.Ala. 1996)—where he had stated that a "counterclaim/crossclaim provides the basis for determining the amount in controversy in the underlying lawsuit filed by Progressive ." Judge DeMent distinguished the *Progressive* case on the ground that the plaintiff had originally filed the claim in federal court, and thus it was not a removal case. 928 F.Supp. at 1243 n. 3. Since the case was one of original jurisdiction, the federalism concerns inherent in a removal case are not implicated. *Id.*

5. *See Horton v. Liberty Mutual Ins. Co.,* 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961); *Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc.,* 98 F.3d 1241 (10th Cir.1996); *Fenton v. Freedman,* 748 F.2d 1358 (9th Cir. 1984); *Premier Indus. Corp. v. Texas Indus. Fastener Co.,* 450 F.2d 444 (5th Cir.1971); *Motorists Mutual Ins. Co. v. Simpson,* 404 F.2d 511 (7th Cir.1968); as well as numerous district court opinions.

Primarily, the Court is concerned with the expansion of federal removal jurisdiction necessarily resulting from such holdings. The Third Circuit's reasoning allows the defendant to waive subject matter jurisdiction. It essentially becomes the defendant's choice as to whether the federal court has jurisdiction. As previously recognized herein, absence of subject matter jurisdiction cannot be waived by the parties—nor can the parties confer on the district court federal jurisdiction otherwise lacking. *See University of South Ala.*, 168 F.3d at 410. *See also Hurt v. Dow Chemical Co.*, 963 F.2d 1142, 1146 (8th Cir.1992) ("subject-matter jurisdiction is not a mere procedural irregularity capable of being waived"). Such an expansion of jurisdiction also does not conform with the mandate for strict construction of the removal statutes announced by both the Supreme Court and the Eleventh Circuit.

The Court also does not consider these decisions as persuasive because they all occurred in the context of original jurisdiction. In each case, the plaintiff had originally filed his or her claim in the federal court. Thus, the removal statute and its accompanying presumption favoring remand does not apply to these cases. The Third Circuit itself distinguished the *Spectacor* case from those cases arising in the removal context. 131 F.3d at 125 (acknowledging that the majority view is that inclusion of a counterclaim should not be permitted in the removal context).

### D. Comparison to Other Removal Situations

The Court also is compelled by the policies established in the context of removal in cases that have dealt with different factual situations. For example, in the context of a federal cause of action, jurisdiction is determined by reference to the "well-pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). This rule provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly-pleaded complaint. *Id.* As the plaintiff is the "master of the claim," he may, by relying exclusively on state law, preclude federal jurisdiction even where a defendant may raise a federal defense to the plaintiff's state claim. *Caterpillar*, 482 U.S. at 392–93, 107 S.Ct. 2425; *Franchise Tax Board v. Constr. Laborers' Vacation Trust*, 463 U.S. 1, 25–28, 103 S.Ct. 2841, 2854–56, 77 L.Ed.2d 420, 442 (1983).

Likewise, a federal issue raised by a plaintiff in his complaint in anticipation of a defense based on federal law is insufficient to establish federal question jurisdiction and support initiation of such action originally federal court. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908) (original federal question jurisdiction did not exist where plaintiffs alleged an anticipated defense and asserted that the defense was invalidated by a provision of the United States Constitution). *See also BCC Apartments, Ltd. v. Browning*, 994 F.Supp. 1440 (S.D.Fla.1997) (holding that complaint, not counterclaim that alleged violation of Fair Housing Act, triggered thirty-day removal period).

Another situation dealing with removal jurisdiction is one in which subsequent pleading reduces the plaintiff's claim for damages after removal. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). The general rule is that "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction" once a case has been properly removed. 303 U.S. at 289–90, 58 S.Ct. at 590–91. In *St. Paul*, the Supreme Court held that the "rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." 303 U.S. at 289, 58 S.Ct. at 590. Moreover, a plaintiff may purposefully reduce the amount he de-

mands in a suit to an amount lower than his actual damages if he desires to remain in a state court. 303 U.S. at 294, 58 S.Ct. at 593 ("If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove"). In such a situation, in order to remove, a defendant must prove to a legal certainty that plaintiff, if he prevailed, would not recover less than the jurisdictional amount. *Burns*, 31 F.3d at 1095, 1097.

These cases demonstrate that the Supreme Court and Eleventh Circuit have consistently considered *only* the complaint when determining federal jurisdiction. They have steadfastly refused to consider any subsequent pleading which may affect the complaint—both in the context of establishing removal jurisdiction and attempting to destroy removal jurisdiction.

The weight of authority compels the conclusion that a federal district court may not consider a counterclaim when determining the amount in controversy in the removal context. The Court will consider only the allegations as stated in the complaint at the time of removal.

### III. Conclusion

As previously noted, the parties agree that the jurisdictional amount in this case must be found, if at all, in the counterclaim. In view of the Court's above analysis and conclusion regarding the subject jurisdictional issue, the Court concludes that it lacks subject matter jurisdiction and, therefore, will remand this case to the state court from whence it came.

The Court is painfully aware that litigation in the instant case has been on-going since at least 1994. The parties' recent excursion to the federal system is only the latest lawsuit in a series of maneuverings and proceedings. This seemingly never-ending saga obviously needs to be brought to a close. However, this Court is powerless to act where jurisdiction is absent. As previously stated, subject matter jurisdic-

tion is a constitutional and statutory requirement over which the Court has no discretion. Those who removed this case to federal court did so at their jurisdictional peril.

Upon consideration of the foregoing, it is hereby **ORDERED**:

1. This Court lacks subject matter jurisdiction over this case.

2. The Clerk is **DIRECTED** to remand this case to the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida.