## AMERICAN TRADING CO., RESPONDENT, *v.* MONSERRAT, APPELLANT.

### APPEAL from the District Court of Ponce.

No. 840.—Decided June 28, 1913.

MORTGAGE—PREFERRED CREDITOR—COLLECTION OF MORTGAGE IN INSTALMENTS—INSTALMENTS OF MORTGAGE NOT DUE.—Article 125 of the Mortgage Law refers to cases of the sale of property mortgaged in favor of several creditors

to satisfy the claim of a first preferred creditor and article 131 of the same law supposes that the property sold is of sufficient value to cover both the due instalment whose collection is sought and those pending. Neither of said articles is applicable to a case in which proceedings are taken to recover an instalment of a mortgage credit which is due when there are other instalments of the same credit not due and the proceeds of the property sold are not sufficient to cover the due instalment.

ID.—FIRST MORTGAGE CREDITOR—RECORD OF LIEN.—According to section 1828 of the Revised Civil Code, it should not be understood that the first mortgage creditor is the one whose credit first falls due, but the one in whose favor the mortgage obligation was first recorded in the registry of property.

ID.—INSTALMENTS OF MORTGAGE—PREFERENCE.—Instalments of the same mortgage are not credits distinct from each other but parts of the same mortgage right and in the absence of an agreement to the contrary, being equal in right, there is no preference among them, although they fall due at different times.

ID.—INSTALMENTS OF MORTGAGE—SALE OF PROPERTY TO SATISFY INSTALMENT OF MORTGAGE WHEN THERE ARE OTHER INSTALMENTS NOT YET DUE—DISTRIBUTION OF PROCEEDS OF SALE.—When property affected by a mortgage payable in instalments falling due at different times, each instalment being represented by a promissory note, is sold and the proceeds of the sale are insufficient to cover the amount of the note or instalment due and for the payment of which the property was sold, wherefore the notes or instalments not yet due cannot be satisfied, the net proceeds of the sale should be divided *pro rata* among all the creditors, the holder of the due instalment who brought the proceedings receiving the proportional part corresponding to him and the portions corresponding to the other instalments being deposited until their cancellation. According to article 176 of the Regulations for the execution of the Mortgage Law, article 1575 of the old Law of Civil Procedure is applicable to the case, whereas neither the Mortgage Law, the Code of Civil Procedure of 1904 nor the Act of March 9, 1905, relative to the manner of satisfying judgments, contain any provision on this point.

ID.—CANCELLATION OF MORTGAGE PAYABLE IN INSTALMENTS—ESSENTIAL ALLEGATION OF COMPLAINT.—In an action for the cancellation of a mortgage securing several instalments of an obligation when the mortgaged property has been adjudicated to the holder of a due instalment in part payment thereof and there are other instalments not due, in order to secure the cancellation of the entire mortgage it is necessary to allege in the complaint that of the proceeds of the sale of the property so adjudicated the *pro rata* shares corresponding to the owners of the other instalments have been deposited.

The facts are stated in the opinion.

*Messrs. Felipe Casalduc* and *Edward S. Paine* for respondent.

*Mr. Alfredo Arnaldo* for appellant.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

The complaint which originated this action was filed in

the District Court of Ponce on June 10, 1911, and its prayer was amended on December 4 following. After certain allegations of the said complaint had been stricken out by a stipulation of the parties filed January 15, 1912, and approved by said court, the facts alleged therein are substantially as follows:

*First.* That by a public instrument dated May 11, 1900, Luis Arán y Lancy voluntarily mortgaged 20 plantations belonging to him as security for the sum of 130,000 provincial *pesos* which he acknowledged that he owed to Baudilio Durán and which he bound himself to pay at the rate of 13,000 provincial *pesos* on May 11 of each year from 1901 to 1910, both inclusive. For each of the said instalments he made a promissory note payable to the order of the creditor, Durán.

*Second.* That the promissory notes numbered one and two were paid and the mortgage lien on some of the properties mentioned in the mortgage deed was canceled as to them.

*Third.* That promissory note number three, due on May 11, 1903, was originally endorsed by Durán to the order of Martín Serra and afterwards by Serra to the order of The American Trading Company, which company brought foreclosure proceedings against Francisca Arán as judicial administratrix of the estate of Luis Arán, deceased, in the District Court of Mayagüez on June 12, 1906, and as a result of said proceedings six of the mortgaged properties described in the complaint were sold to The American Trading Company at public auction for $4,830 in part payment of the balance due on the said promissory note, which amounted to $6,804 principal and $1,305.81 interest. A deed of conveyance to the said properties was executed on February 20, 1908, and The American Trading Company took possession thereof.

*Fourth.* That promissory note number 5, due on May 11, 1905, was endorsed by Baudilio Durán to the order of Conrado Palau who wrote three other endorsements following the first

and crossed them out with pen and ink, after which Palau made another endorsement of the same to the order of Damián Monserrat Suro in Barcelona, Spain, on September 12, 1910.

*Fifth.* That Monserrat Suro, the holder of note number five, instituted summary foreclosure proceedings under the Mortgage Law in the District Court of Mayagüez against The American Trading Company, demanding of said company as owner of the six properties adjudicated to it, the payment of said promissory note, which, according to the complaint, amounted to $12,948. On April 25, 1911, the court issued an order that the defendant be required to pay the amount claimed within 30 days from the date of the order and on May 25 following the marshal of said court attached all the properties which had been adjudicated to The American Trading Company and also published notices advertising the sale of the same at public auction to take place on June 22 of the same year to satisfy Monserrat's claim.

*Sixth.* That the attachment and notices of sale of said properties were levied and published prior to the expiration of the 30 days granted The American Trading Company by the court in which to make the payment.

*Seventh.* That by following all the steps of the proceedings brought by Monserrat, the plaintiff would have no opportunity to defend its rights in a proper judicial controversy and a multiplicity of judicial proceedings would arise with Martín Serra, Conrado Palau, Succession of Arán, Baudilio Durán, and Damián Monserrat Suro, originating heavy and unnecessary expenses and causing loss of time to the court; that besides it would be very difficult to estimate the amount of the damages which would be occasioned the plaintiff, which in all probability would not be recoverable because, as the plaintiff is informed, Damián Monserrat Suro and the Succession of Luis Arán are insolvent.

The complaint concluded with the prayer, afterwards amended, that judgment be rendered in the following terms:

*First.* That the foreclosure proceedings instituted by Damián Monserrat Suro against The American Trading Company in the District Court of Mayagüez for the recovery of the amount due on said promissory note number five are null *in toto* and, therefore, that all the orders and other proceedings incident thereto are null and void.

*Second.* That as the promissory note number five has no hypothecary character as regards the properties adjudicated to The American Trading Company, it be ordered that the mortgage of May 11, 1900, securing the same be canceled in the Registry of Property of Mayagüez in so far as it concerns said properties, an order to that effect to be issued to the Registrar of Property of Mayagüez; and, lastly, that a temporary injunction be issued after a proper bond shall have been filed enjoining the defendant, Damián Monserrat Suro, his successors, attorneys, agents, employes or servants, from performing or causing to be performed any act involving a lien on, advertising the sale of, or the sale or public auction of the real property of The American Trading Company referred to in the complaint until further order of the court to the contrary, and that the costs and attorney's fees be imposed on the defendant.

The defendant, Monserrat Suro, demurred to the amended complaint on the ground that it did not state facts sufficient to constitute a cause of action and the Ponce court, for the reasons stated in the opinion of January 31, 1912, rendered a decision dismissing the complaint in regard to its count for the nullity of the proceedings, holding that the court had no jurisdiction of said cause of action, and also overruling the general demurrer to the sufficiency of the complaint with respect to the cancellation of the mortgage prayed for in the complaint.

In the record nothing appears regarding the temporary injunction prayed for in the complaint, but the judge states in his opinion that it was the object of consideration and decision in another independent proceeding.

On February 6 following Damián Monserrat Suro filed a motion for a judgment on the pleadings, waiving his right to answer the complaint in order to be able to appeal from said judgment. Such judgment was rendered on February 12, 1912, dismissing that part of the complaint filed by The American Trading Company which referred to the action to annul the proceedings and sustaining that part of the complaint which referred to the cancellation of the mortgage credit, decreeing and ordering as a consequence thereof the cancellation of the mortgage created by the public instrument executed before the Mayagüez notary, Mariano Riera Palmer, on May 11, 1900, by Luis Arán y Lancy in favor of Baudilio Durán in so far as the same constituted a lien on the six properties awarded to The American Trading Company and described in the complaint, also in so far as the said mortgage likewise secured the payment of the instalment thereof due on May 11, 1905, and represented by promissory note number five, which is described and transcribed in the complaint and was endorsed to the defendant, Damián Monserrat Suro. The court further decreed that an order to this effect be issued in duplicate to the Registrar of Property of Mayagüez and that costs be imposed upon the defendant.

Counsel for Monserrat y Suro appealed from that part of said judgment which ordered the cancellation of the mortgage securing the promissory note held by the defendant and representing the instalment due May 11, 1905, of the mortgage created by Arán in favor of Durán by the instrument executed before Notary Mariano Riera of Mayagüez on May 11, 1900.

There is now pending before this court for consideration and decision another appeal taken by counsel for The American Trading Company from that part of the same judgment which dismissed the complaint as regards the action to annul the proceedings, which appeal has been decided on this same date.

The lower court bases its decision from which the present appeal was taken upon articles 120 and 121 of the Mortgage Law, under which it holds that the procedure of The American Trading Company in directing its action for the recovery of its credit against six of the properties mortgaged by Arán is in perfect accord with the provisions of our Mortgage Law. It then proceeds to examine articles 122 and 124 of the same law and reaches the conclusion that as The American Trading Company did not pay money for the properties but credited the amount of its bid on the execution, it has the right to the total cancellation in the registry of that part of the mortgage created by Arán in the deed executed on May 11, 1900, which constituted a lien upon said properties inasmuch as the said properties do not secure the balance of the credit burdening the other properties.

The articles above cited and which the appellant considers to have been unduly applied to the case, read as follows:

"Article 120.—After the portion of the debt for which each mortgaged estate must be responsible is entered in the record, they can not be proceeded against to the prejudice of third persons, except for the amount for which they are respectively responsible and the corresponding interest in accordance with the provisions contained in preceding articles.

"Article 121.—The provisions of the preceding article shall not be understood as prejudicing the rights of the creditor, if the mortgage does not satisfy the total amount of the debt, to proceed to recover the difference against the other mortgaged property which the debtor still owns, but without preference as to said difference over those who may have acquired some real interest in the property after the mortgage was recorded.

Article 122.—The mortgage shall continue intact as long as it is not canceled on all the property mortgaged, even if the obligation secured is reduced, and on any other portion of the same property which is retained, although the remainder has disappeared, but without prejudice to the provisions contained in the following two articles.

＊　　＊　　＊　　＊　　＊　　＊　　＊

"Article 124.—If a mortgage created for the security of a debt is

distributed among various estates and 'the portion of the debt ·which is due from any of the estates has been paid, the interested party may demand a partial cancellation of the mortgage with regard to said estate.'' * * *

The wording of the articles quoted shows of itself that they do not decide the legal question submitted to us for consideration. This question is only whether when the properties were awarded to The American Trading Company in part payment of the mortgage credit, of which it became the owner by the endorsement to it of promissory note number three representing such credit, the mortgage lien on said properties was extinguished as to the other promissory note number five on which Damián Monserrat brought suit.

In our opinion the articles of the Mortgage Law applicable to the case are the following:

''Article 125.—* * *. In the case of one or several estates being encumbered by mortgage debts of various creditors, and they are sold or awarded for the payment of the first creditor in such manner that the value of what is sold or awarded does not equal or exceed the mortgage debt which is liquidated, the remaining debts shall be, by act and right, considered canceled, and will therefore be canceled in the registry after the proper order of the court for the sale or award, and the reasons therefor are filed referring to the instrument which created the solvency of the preferred debt, all subsequent record of annuities (*censos*) or mortgages and records of attachment also made subsequently, thus leaving the estate or estates which have been conveyed or awarded free from all encumbrances.

''This shall be without prejudice to other rights and actions which the remaining creditors may exercise against the debtor in accordance with the laws.

* * * * * * *

''Article 131.—If for the payment of one of the instalments of the capital or interest it should be necessary to convey the mortgaged estate, and other instalments of the obligation shall still remain due, the sale shall take place, and the estate shall be transferred to the purchaser with the proper mortgage for the portion of the debt which has not yet been satisfied, which portion with the interest will be deducted from the price.

"If the purchaser does not desire the estate with this lien, the value thereof with the proper interest shall be deposited, to be paid to the creditor when the pending payments fall due."

It will be seen that article 125 refers to cases where properties mortgaged in favor of various creditors are sold or awarded to pay a first preferred creditor, and that article 131 provides what shall be done in case of the conveyance of a mortgaged property for the payment of certain instalments of the obligation already due when other instalments of the same are not due. Article 131 supposes the case of a property of sufficient value to respond both for the instalment due and for those not due, for, if such were not the case, nobody would venture to purchase the same to the prejudice of his interests. In business transactions the idea of loss never controls.

It should not be understood that the first mortgage creditor is the one whose credit first becomes due, but the one in whose favor the mortgage obligation was first recorded in the registry, as is expressly enacted in section 1828 of the Civil Code, which provides that mortgages and agricultural credits entered or recorded in the registry of property shall enjoy priority among themselves according to the priority of the respective entries or records.

It does not appear from the complaint that the credits belonging to The American Trading Company and Damián Monserrat represented by promissory notes payable to order falling due on May 11, 1903 and 1905, and originating from the same deed, were recorded in the registry on different dates, but, on the contrary, it appears that they must have been recorded on the same date on which the deed itself was recorded.

As alleged by the appellant, the instalments of a mortgage are not credits different from each other, but parts of the same mortgage right, and except when an agreement to the contrary is made they do not enjoy priority among themselves, being all equal in right. The record is what gives the

preference and the question is not at issue whether the mortgage right represented by the promissory note of The American Trading Company was recorded before the mortgage right represented by the promissory note of Damián Monserrat was recorded, or whether it was agreed in the mortgage deed that either of said promissory notes should enjoy a preference over the other.

According to article 79 of the Mortgage Law, a total cancellation of records and of cautionary notices may be demanded and should be ordered, among other cases, when the recorded interest is completely extinguished, and according to article 132 of the Regulations for the execution of said law, a recorded property right shall be considered as extinguished, among other cases, when the judicial sale of an estate has taken place and the first mortgage having been paid from the proceeds no balance remains to be applied to the payment of the credits subsequently recorded, in accordance with the provisions contained in article 125 of the law.

In this appeal there is no question of a first mortgage creditor or of credits subsequently recorded. The credits of The American Trading Company and of Damián Monserrat Suro are equal in right. There being no express provision in the Mortgage Law, we will now consider what action should be adopted when one or more properties have been sold or awarded for the payment of a due instalment of a mortgage obligation and the proceeds of the sale or award are insufficient to cover the amount of the due instalment and, therefore, the instalments not due cannot be satisfied in any manner.

Article 176 of the Regulations for the execution of the Mortgage Law provides that the provisions of the Law of Civil Procedure in force in Cuba, Porto Rico, and the Philippines, shall be applicable to proceedings for the recovery of mortgage credits as supplementary when not in conflict with the provisions contained in the Mortgage Law and those Regulations.

Neither in the Code of Civil Procedure which went into

effect on July 1, 1904, nor in the act relating to judgments and the manner of satisfying them, approved March 9, 1905, do we find any provision which decides the question at issue, but referring to the old Code of Civil Procedure we find article 1515, which reads as follows:

"Article 1515.—If the execution should have been issued by virtue of instruments payable to bearer secured by a mortgage recorded against the estate sold, and if there are other similar instruments outstanding, the net amount received at the sale shall be distributed *pro rata* among all of them, the execution creditor receiving his share and the portions pertaining to the other holders shall be deposited until their titles are canceled, for which purpose the procedure established in articles 96 and 90 respectively of the Mortgage Law of Cuba and Porto Rico may be employed."

The foregoing provision will serve us as a guide for the decision of the present case.

In commenting on article 1517 of the Spanish Code of Civil Procedure, which is reproduced in article 1515 of our old Law of Civil Procedure above quoted, the learned commentator, José María Manresa y Navarro, expresses himself as follows:

"Although article 1517 treats only of cases of instruments payable to bearer, its provisions are applicable by analogy to other cases where there are other creditors with mortgage rights similar to those of the execution creditor. If this is shown by the registrar's certificate, the net proceeds of the sale of the mortgaged property should be distributed *pro rata* among all of them, the execution creditor receiving his share and the amounts corresponding to the other creditors being deposited in the court."

We agree with Manresa's opinion.

Now, the complaint does not state the amount or part of the debt which should burden each of the 20 properties mortgaged by Luis Arán y Láncy to secure the payment of the 10 promissory notes drawn in favor of Durán, nor does it state the amount for which each of the six properties awarded to

The American Trading Company in satisfaction of promissory note number three, of which it was the holder, should respond. In said note number three for 13,000 provincial *pesos* due May 11, 1903, transcribed in the complaint, L. Arán states that as security for said obligation and others amounting in the aggregate to 130,000 provincial *pesos* and interest thereon at 6 per cent per annum, he had mortgaged in favor of Baudilio Durán 20 rural properties situated in the municipal districts of Mayagüez, Las Marías, and Cabo Rojo, as is set forth in greater detail in the mortgage deed of May 11, 1900.

The wording of the said promissory note shows that the six properties awarded to The American Trading Company in part payment of the obligation referred to, guaranteed other obligations, among them note number five, also transcribed in the complaint, due on May 11, 1905, which note came into the possession of Damián Monserrat Suro by an endorsement in his favor and for the collection of which he instituted foreclosure proceedings against the six properties awarded to The American Trading Company.

The complaint shows that these properties were awarded to The American Trading Company for $4,830 in part payment of its credit of $6,804 principal and $1,305.81 interest, but it does not allege that that amount was distributed *pro rata* among the other creditors or holders of other notes who had equal mortgage rights with regard to these six properties as The American Trading Company, which allegation was essential and necessary in the present case to justify the cancellation prayed for. The facts stated in the complaint do not constitute a cause of action for the purposes of said cancellation.

The statutory laws of Louisiana in regard to promissory notes secured by a single mortgage were the same as they are in Porto Rico—that is, there was no provision which directly decided what action should be taken when one of the notes fell due and the mortgaged property was sold for an

amount insufficient to pay the total amount of the notes secured. The Supreme Court of the State applied the *pro rata* rule in deciding various cases and the Supreme Court of the United States affirmed the judgment of the Supreme Court of the State. See the case of *Lovell* v. *Cragin,* 136 U. S., 130, where the question is discussed fully and where, in brief, the following doctrine is established:

"In Louisiana the holder of one or more of a series of notes, secured by a concurrent mortgage of real estate, is entitled to a *pro rata* share in the net proceeds arising from a sale of the mortgaged property at the suit of a holder of any of the other notes and any hypothecary action lies to enforce such claim based upon the obligation which the law casts upon the purchaser to pay the *pro rata* share of the debt represented by the notes that were not the subject of the foreclosure suit."

For the foregoing reasons we are of the opinion that the judgment appealed from should be reversed as to the pronouncement to which the present appeal refers, reserving to the plaintiff such rights as it may have to secure the cancellation prayed for in the proper manner by complying with the necessary requisites in accordance with the principles established herein and the legal provisions applicable to the case.

*Judgment reversed as to the part appealed from.*

Justices Wolf, del Toro and Aldrey concurred.

Mr. Justice MacLeary took no part in the decision of this case.