

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-24-1997

# Spectacor Mgt Grp v. Brown

Precedential or Non-Precedential:

Docket
96-1969

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Spectacor Mgt Grp v. Brown" (1997). *1997 Decisions.* Paper 265.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/265

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 24, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1969

SPECTACOR MANAGEMENT GROUP

v.

MATTHEW G. BROWN,
        Appellant.

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 93-5246)

Argued
June 24, 1997

Before: GREENBERG, McKEE, Circuit Judges, and
WELLFORD,* Senior Circuit Judge

(Filed November 24, 1997)

        GARY GREEN, ESQ. (Argued)
        Sidkoff, Pincus & Green
        1101 Market Street
        Suite 2700
        Philadelphia, PA 19107
Attorney for Appellant

_____
*The Honorable Harry W. Wellford of the United States Court of Appeals
of the Sixth Circuit, sitting by designation.

        IRA B. SILVERSTEIN, ESQ. (Argued)
        Fox, Rothschild, O'Brien &
         Frankel
        2000 Market Street
        Philadelphia, PA 19103
        Attorney for Appellee

OPINION OF THE COURT

McKEE, Circuit Judge.

Spectacor Management Group ("Spectacor") initiated this
diversity action as a result of a disagreement with a former

senior level executive over severance pay and benefits. The defendant counterclaimed, alleging that Spectacor had breached an oral contract with him and owed him money as a result. Following a bench trial, the district court entered judgment for the defendant but in an amount that was substantially less than the amount of his counterclaim. The defendant appeals. We will affirm the judgment of the district court without further comment, as it is based upon that court's assessment of the evidence, and find no clear error.[1] However, the jurisdictional issues raised by this appeal require us to discuss the district court's exercise of subject matter jurisdiction. Accordingly, we will discuss whether the amount in controversy requirement of 28 U.S.C.A. S 1332(a) has been satisfied.

I.

Spectacor, a Pennsylvania joint venture engaged in the business of managing public assembly facilities, such as stadiums, arenas, and convention centers, brought this diversity action in an attempt to recoup severance benefits paid to defendant Matthew Brown, a New Jersey citizen, following his termination as Executive Vice-President of Spectacor. Spectacor's complaint alleged that it paid Brown $42,500 in benefits and $4,921.04 for medical insurance. The resulting total ($47,421.04) was, therefore, less than

_____

1. See Anderson v. Bessemer City, 470 U.S. 564 (1985).

the $50,000 minimum required for diversity jurisdiction when the suit was filed. Spectacor, however, also alleged that it was entitled to recoup an additional $3,287.21 it had paid in payroll taxes. This additional sum brought the amount that Spectacor claimed to $50,708.25 exclusive of costs and interest.

Brown argues that Spectacor included the amount of the payroll taxes as a "sham" to manufacture federal jurisdiction in a preemptive attempt to prevent him from suing Spectacor in state court. Brown further argues that Spectacor conceded that even Spectacor's claim to recover benefits from Brown was a "sham" because Spectacor stipulated in the district court that it owed him $50,000 in benefits plus $15,692 in vacation pay. See Appellant's Br. at 5. Spectacor maintained that it retained the money that it owed Brown as a set off against payments it had made to Brown that he was obligated to repay. Thus, Brown's response to the suit was twofold. He claimed that Spectacor manipulated the payroll tax claim as a contrivance to

manufacture the amount in controversy needed for diversity jurisdiction and that Spectacor owed him more than he owed it. However, rather than filing a motion to dismiss Spectacor's complaint for lack of jurisdiction in the district court under Fed. R. Civ. P. 12(b)(1), Brown filed an answer in which he denied jurisdiction, and counterclaimed against Spectacor for the amount Spectacor allegedly owed him for severance pay ($135,000), sales commissions ($837,000), an earned bonus ($70,720), unused vacation days and unreimbursed business expenses ($17,550).

Spectacor argues that it included payroll taxes in good faith and the jurisdictional amount therefore appears on the face of the complaint. Spectacor maintains that, in any event, Brown's counterclaim can be considered in calculating the amount in controversy. That counterclaim easily surpasses the $50,000 threshold needed for diversity jurisdiction. Brown counters by arguing that Spectacor's allegation of damages in the amount of $50,708.25 fails to satisfy the jurisdictional amount as the claim was not made in good faith and that his counterclaim cannot be considered in calculating the amount in controversy.

3

We hold that where, as here, a defendant elects not to file a motion to dismiss for lack of jurisdiction, but answers a complaint by asserting a compulsory counterclaim, 2 the amount of that counterclaim may be considered by the court in determining if the amount in controversy exceeds the statutory requirement for diversity jurisdiction. Accordingly, since the amount in controversy easily clears the jurisdictional hurdle when Brown's counterclaims are included, we need not reach the novel and interesting issue of whether the payroll taxes can be considered in calculating the amount in controversy.

II.

Federal courts have diversity jurisdiction where there is complete diversity among the parties, and the amount in controversy meets the jurisdictional minimum. See 28 U.S.C. S 1332(a). At the time this case wasfiled that amount was $50,000.3 As a general rule, that amount is determined from the good faith allegations appearing on the face of the complaint. See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288 (1938). A complaint will be deemed to satisfy the required amount in controversy unless the defendant can show to a legal certainty that the plaintiff cannot recover that amount. Id. at 289.

In a cause instituted in the federal court the plaintiff

chooses his forum. He knows or should know whether his claim is within the statutory requirement as to amount. His good faith in choosing the federal forum is open to challenge not only by resort to the face of his complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction there is no injustice in dismissing the suit.

Red Cab, 303 U.S. at 290. As noted above, Brown challenged the district court's jurisdiction by way of an

_____

2. We note that this case only presents the question of whether compulsory counterclaims can be considered. Our holding does not extend to permissive counterclaims.

3. That amount has since been increased to $75,000.

averment in his answer. At P 16 of his answer, under the section of the answer captioned "DEFENSES", Brown states: "[t]he Court lacks jurisdiction over the subject matter in that the amount in controversy does not exceed $50,000.00." See app. at 16. Under Rule 12 of the Federal Rules of Civil Procedure, Brown could have filed a motion to dismiss for lack of jurisdiction and not filed an answer unless that motion was denied.

> Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter . . . ."

Fed. R. Civ. P. 12(b) (emphasis added). Brown elected not to exercise that option. Instead, he asserted a counterclaim against Spectacor based upon the same transactions that gave rise to Spectacor's suit against him.

Federal Rule of Civil Procedure 13 provides in part as follows:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction . . . .

Fed. R. Civ. P. 13. Brown's claim against Spectacor is a compulsory counterclaim within the scope of this Rule. Where the circumstances surrounding a plaintiff 's claim require a defendant to assert a counterclaim under Rule 13(a), defendant's claim is part of the controversy set forth in the plaintiff 's complaint. The complaint initiates the legal action, but it is not the totality of the controversy. It is merely the portion of the controversy for which plaintiff seeks relief. However, the substance of the controversy extends to any compulsory counterclaim brought under Rule 13(a).[4]

_____

4. The same is not true of counterclaims brought under Rule 13(b) as "permissive counterclaims" are simply "any claim against an opposing

5

> [I]f the jurisdictional amount requirement serves any salutary function it is to measure the substantiality of the claim. We believe that the substantiality of the claim can best be gauged by reference to what is actually at stake in the litigation rather than by strict reference to plaintiff's claim for relief.

1A James Wm. Moore et al., Moore's Federal Practice, P 0.167[8] (2d ed. 1991).

The allegations of the instant suit demonstrate the wisdom of that approach. Spectacor alleges that it continued to pay Brown his salary and medical insurance after he was terminated "as an advance against the overall settlement then being negotiated." It maintains that such payments were a "demonstration of good faith and subject to reimbursement if agreement was not reached on all issues" regarding the termination of his employment. (See app. at 10; Compl. P 10.). Its suit is an attempt to recover those funds pursuant to the alleged agreement as settlement of the dispute was apparently never negotiated. Brown, on the other hand, asserts that Spectacor breached a contract in which it agreed to pay him certain amounts in the event that his employment was terminated, and that he was entitled to certain other payments by virtue of his performance while still employed at Spectacor. He specifically alleges that "[Spectacor] has breached the Employment Contract by not paying Brown sums [Spectacor] promised to pay upon his termination," (See app. at 18; Answer P 36), and "[Spectacor] has stopped Brown's medical insurance coverage, and it therefore owes him a yet to be liquidated sum for its replacement." (See

_____

party not arising out of the . . . occurrence that is the subject matter of
the opposing party's claim." Fed. R. Civ. P. 13(b). Thus, by definition, permissive counterclaims are not usually part of the controversy brought into court by plaintiff 's complaint.

However, we do not today decide whether a permissive counterclaim could ever bear such a nexus to a plaintiff's claim as to allow a court to consider it in determining if the amount in controversy exceeded the jurisdictional amount. Resolution of that question must await a more appropriate case.

6

app. at 19; Answer P 37; see also app. at 19-20; Answer PP 38-43).

Other courts have held that a compulsory counterclaim can satisfy the jurisdictional amount even where the defendant has not objected to jurisdiction. See Fenton v. Freedman, 748 F.2d 1358 (9th Cir. 1984) (considered counterclaim where defendant had not objected to jurisdiction prior to filing compulsory counterclaims); Roberts Mining & Milling Co. v. Schrader, 95 F.2d 522 (9th Cir. 1938) (considered counterclaim where defendant did not object to jurisdiction, but instead filed counterclaim in an amount adequate to support jurisdiction);5 Motorists Mutual Ins. Co. v. Simpson, 404 F.2d 511 (7th Cir. 1968) (holding that compulsory counterclaim was not to be considered where defendant objected to jurisdiction before filing a counterclaim, but noting that if no objection had been made, consideration of compulsory counterclaim was permissible).6

_____

5. We note that the Roberts Mining court did not explicitly hold that the counterclaim was compulsory. However, the initial claim by the plaintiff was to quiet title to six mines while the counterclaim asserted that the mines were owned by the defendant. Such a counterclaim would be considered compulsory under the modern Rule 13(a). The claim was also compulsory under the procedural rules that prevailed at the time. While the decision was handed down in 1938, the year that the federal courts of equity and law were unified into the modern system governed by the Federal Rules of Civil Procedure, the suit was filed prior to such unification and thus was one brought "in equity." 95 F.2d at 522. Such actions were governed by procedural rules that, unlike the rules governing actions at law, recognized compulsory counterclaims. See Equity Rule 30 (" `The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit ....""). American Mills Co. v. American Surety Co., 260 U.S. 360,

365 (1922) (noting that it is imperative to limit the preclusive effect of counterclaims to those which are equitable, as opposed to legal in nature); Michael D. Conway, Narrowing of the Scope of Rule 13(a), 60 U. Chi. L. Rev. 141, 154 (1993) ("Prior to 1938, there was no rule requiring the pleading of compulsory counterclaims at law.")(citing American Mills, supra).

6. Spectacor also points to National Union Fire Ins. Co. of Pittsburgh v. Russell, 972 F.2d 628 (5th Cir. 1992), which held that where an insurer challenges an award under the Texas Worker's Compensation Act in

Prior to the 1938 unification of the law and equity courts and the adoption of the Federal Rules of Civil Procedure, this court held that a counterclaim of sufficient value could bring a case within the jurisdiction of the court regardless of the amount of plaintiff's claim. See Home Life Ins. Co. v. Sipp, 11 F.2d 474, 476 (3d Cir. 1926).

In Home Life, Sipp was the beneficiary of a life insurance policy that the defendant insurance company had issued on her mother's life. Following her mother's death, Sipp sued to recover the amount of the policy ($3,000) plus interest and costs. At the time, a claim had to exceed $3,000 exclusive of interest and costs to satisfy the amount required for diversity jurisdiction. The insurance company filed a counterclaim for a loan on the policy that remained outstanding in the amount of $423. Sipp subsequently attempted to amend her claim to include premiums that were paid for the period following her mother's death. However, the court ruled that the amount of "unearned premiums" could not be included as "the premium is earned the instant the risk attaches and is not returnable thereafter." Id. at 475. Moreover, even if the premium could be recovered, that amount would go to the estate of the deceased, and not to the plaintiff beneficiary. Thus, the amount of the premium could not count toward the jurisdictional minimum. Moreover, the amount of the counterclaim could not be added to the $3,000 claim to satisfy jurisdiction because the counterclaim was in the nature of a set-off to be subtracted from, not added to, any recovery. Accordingly, the counterclaim served only to reduce the amount in controversy. However, in deciding the case we stated:

> when the jurisdictional amount is in question, the tendering of a counterclaim in an amount which in itself, or added to the amount claimed in the petition,

_____

federal court, the defendant's counterclaim could be considered for

purposes of the jurisdictional amount. However, that case relies specifically on Horton v. Liberty Mut. Ins. Co., 367 U.S. 348 (1961), which
dealt with the Texas Worker's Compensation Act and which, as discussed below, we do not rely upon here. See n.9 infra.

8

> makes up a sum equal to the amount necessary to the jurisdiction of this court, jurisdiction is established, whatever may be the state of the plaintiff's complaint.

Id.

Brown suggests that Home Life held that a counterclaim did not suffice to give a court jurisdiction where the plaintiff 's initial claim could not. See Appellant's Sup. Br. at 6. He points out that we also stated: "[a] party . . . cannot by filing a counterclaim give jurisdiction to a court when a statute denies it jurisdiction. In other words, a defendant's consent to the court's jurisdiction as to amount, signified by the filing of the counterclaim cannot confer jurisdiction." Home Life, 11 F.2d at 476. However, that portion of the opinion merely rejects plaintiff 's argument that defendant should be estopped from challenging jurisdiction once he or she pleads a counterclaim. It does not address the issue of whether the amount of the counterclaim is included in the amount in controversy for jurisdictional purposes.

We concluded that the jurisdictional prerequisites were not satisfied in Home Life, because the counterclaim reduced the amount that the "defendant admits it owes" and was not an independent claim for recovery. Accordingly, we stated "[a]t no time and under no arrangement of the figures [had] the amount in controversy exceeded $3,000." Id. Although cases of such ancient vintage do not always guide subsequent inquiries with precision (especially in view of the evolving nature of federal jurisdiction), we think that our analysis in Home Life, along with similar holdings from our sister circuit courts of appeals, counsel us here. Cf. Fenton, 748 F.2d at 1359 (holding that the circuit was bound to follow prior 1938 precedent of Roberts Mining, which was considered a "suit in equity" and, like Home Life, was decided under procedural law applicable before the federal system was unified). Moreover, the discussion in Home Life remains viable under today's unified federal court system.

Other courts have noted practical reasons for counting compulsory counterclaims toward the jurisdictional amount. In Roberts Mining, the court reasoned that

consideration of the counterclaim was permissible because the counterclaim was the equivalent of a second, independent suit in which the defendant of the initial action was the plaintiff, 95 F.2d at 524 (citing Merchants' Heat & Light Co. v. James B. Clow & Sons, 204 U.S. 286 (1907)), and that the matter in controversy was the same in each of these suits. Id. Therefore, because the court would have jurisdiction over this second suit, the court saw no impediment to asserting jurisdiction over the entirety of the initial action. Id. This reasoning is echoed in more recent cases where courts have noted that where there is no objection to jurisdiction and where the counterclaim independently meets the required amount, one can assume that the defendant would have chosen the federal forum and there is no reason not to exert jurisdiction simply because the plaintiff won the race to the courthouse. See Motorists Mutual Ins., 404 F.2d at 514-15.7

Of course, we do not mean to suggest that parties can agree to the jurisdiction of a federal court and thereby confer jurisdiction that would not otherwise exist. That is clearly not the case. Federal jurisdiction arises under the constitution. It is not created by contract or waiver. In Fenton, the court stated:

> [e]ach of the . . . compulsory counterclaims exceeded $10,000. In Roberts Mining & Milling Co. v. Schrader, we stated that a counterclaim that exceeded the necessary amount in controversy was sufficient to bring the entire case within the jurisdiction of the district court, regardless of the lack of jurisdictional averments in the . . . complaint . . . . The [defendants here] did not object to the district court's exercise of

_____

7. We realize that Brown is here arguing that he intended to sue in state court and that Spectacor raced into federal court as a preemptive strike to avail itself of a more favorable forum, see Appellant's Br. at 6, and therefore this presumption does not apply here. In the situation here, if Brown had sued in a Pennsylvania state court, Spectacor, as a Pennsylvania citizen, would not have been able to remove the case to the district court. See 28 U.S.C. S 1441(b). Nevertheless, these policy implications are still relevant to our discussion. In noting them, we do not suggest that there is any merit to the belief of either party here that a federal or state forum will benefit either side.

> jurisdiction prior to the filing of their compulsory counterclaim but, rather, raised the issue for thefirst time on appeal.

748 F.2d at 1358 (citations and internal quotation marks omitted). However, the court could not have intended to suggest that jurisdiction can be waived. Rather, we conclude that the court was simply noting that the defendants there had done nothing to prevent the amount of their counterclaim from becoming part of the controversy that was initiated by the plaintiff's suit, and that the counterclaim was therefore properly considered in determining the amount in controversy. Similarly, Brown did object to jurisdiction, but he did not do so in a manner that kept his counterclaim from being before the court. When a defendant elects that option afforded under Rule 12 and decides not to move to dismiss for lack of subject matter jurisdiction, but asserts a compulsory counterclaim against the plaintiff instead, the defendant thereby places the amount of the counterclaim into controversy, and the court must consider that amount in determining if it has jurisdiction under 28 U.S.C.A. S 1332(a). This is true whether or not the defendant also attacks subject matter jurisdiction in his or her answer or in any other manner that does not prevent the counterclaim from being before the court.8

In arguing that we should not consider compulsory counterclaims, Brown also points to Oliver v. Haas, 777 F. Supp. 1040 (D.P.R. 1991); Michael F. Ronca & Sons, Inc. v. Monarch Water Systems, 1990 WL 140154 (E.D. Pa. 1990); P.S. Group v. Aladdin Engineering and Manufacturing, Inc., 1990 WL 122938 (E.D. Pa. 1990); and Cabe v. Pennwalt, 372 F. Supp. 780 (W.D.N.C. 1974). See Appellant's Sup. Br. at 6. Each of these cases was decided in the context of removal and each holds that counterclaims cannot be considered when determining whether an action has been

_____

8. Here, in addition to a statement in his answer challenging jurisdiction,
Brown subsequently moved for sanctions under Fed. R. Civ. P. 11 when, in response to Brown's summary judgment motion, Spectacor conceded that it owed Brown more than he owed it. See Appellant's Br. at 6. However, that does not alter our analysis.

11

properly removed. Although there is authority to the contrary, see, e.g., Swallow & Assoc. v. Henry Molded

Products, Inc., 794 F. Supp. 660 (E.D. Mich. 1992) (holding that in the removal context "substantiality of claim" should be gauged by considering the compulsory counterclaim), the cases to which Brown points appear to represent the majority view that inclusion of counterclaims should not be permitted in the removal context. Wright, supra, at 124 (collecting cases). However, removal is governed by considerations inapplicable to cases involving the exercise of original jurisdiction. In Shamrock Oil Corp. v. Sheets, 313 U.S. 100, 107-109 (1941), the Supreme Court noted that the legislative history and language of the removal statute shows that Congress intended to limit removal. The Court reasoned that removal was statutory and not constitutional, and that removal jurisdiction must, therefore, be narrowly construed in favor of the non-removing party to prevent, inter alia, encroachment on the right of state courts to decide cases properly before them. The contrary consideration is present when we consider a court's exercise of original jurisdiction. Thus, in the abstention context, the Court has stated:

> [T]he federal courts have a virtually unflagging obligation to exercise their jurisdiction except in those extraordinary circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

Deakins v. Monaghan, 484 U.S. 193, 202 (1988) (internal quotation marks omitted). Furthermore, "if compulsory counterclaims were considered for purposes of jurisdiction, federal subject matter jurisdiction would be reliant on state law distinctions between compulsory and permissive counterclaims." Meridian Aviation Service v. Sun Jet Int'l, 886 F.Supp. 613, 615 (S.D.Tex. 1995). Accordingly, Brown's reliance upon cases addressing issues surrounding removal jurisdiction does not assist us.

Here, Brown submitted his compulsory counterclaim to the district court thereby putting the amount of that counterclaim in controversy. The amount of his counterclaim must be considered in determining whether

12

the district court had subject matter jurisdiction. See also Horton, 367 U.S. 348 (1961).9
_____

9. In Horton an insurance company filed suit in federal court, alleging diversity jurisdiction, to challenge a $1,050 award given by the Texas Industrial Accident Board pursuant to the Texas Workman's Compensation Act. In its complaint, the company also asserted that the

defendant would assert a compulsory counterclaim that he was entitled to an award of $14,035. In response, the defendant filed a motion to dismiss for failure to satisfy the amount in controversy and filed an answer, subject to the motion to dismiss, containing the $14,035 conditional compulsory counterclaim just as plaintiff had predicted. Although the amount of the insurance company's claim clearly did not meet the amount in controversy minimum that was then an amount in excess of $10,000, the Supreme Court held that the jurisdictional requirement was met because of the $14,035 counterclaim. The Court stated:

> The complaint of the respondent company filed in the District Court, while denying any liability at all and asking that the award of $1,050 against it be set aside, also alleges that petitioner Horton has claimed, now claims and will claim that he has suffered total and permanent disability and is entitled to a maximum recovery of $14,035, which, of course, is in excess of the $10,000 requisite to give a federal court jurisdiction of this controversy. No denial of these allegations in the complaint has been made, no attempted disclaimer or surrender of any part of the original claim has been made by petitioner, and there has been no other showing, let alone a showing `to a legal certainty,' of any lack of good faith on the part of the respondent in alleging that a $14,035 claim is in controversy.
> It would contradict the whole record as well as the allegations of the complaint to say that this dispute involves only $1,050. The claim before the [Texas Industrial Accident] Board was $14,035; the state court suit of petitioner asked that much; the conditional counterclaim in the federal court claims the same amount. Texas law under which this claim was created and has its being leaves the entire $14,035 claim open for adjudication in a de novo court trial, regardless of the award. Thus the record before us shows beyond a doubt that the award is challenged by both parties and is binding on neither; that petitioner claims more than $10,000 from the respondent and the respondent denies it should have to pay petitioner anything at all. No matter which party brings it into court, the controversy remains the same; it involves the same amount of money and is to be adjudicated and determined under the same rules. Unquestionably, therefore, the amount in controversy is in excess of $10,000.

13

III.

For the reasons set forth above, we will affirm the judgment of the district court.

_____

367 U.S. at 353-54.

As the dissent noted, Horton can be read as holding that if a plaintiff asserts in the complaint that a counterclaim will be brought in an amount above the jurisdictional minimum, then the amount in controversy has been satisfied. Yet, that is clearly contrary to the well-established rule (developed in the context of federal question jurisdiction)
that a plaintiff cannot create federal jurisdiction by anticipating federal
defenses that a defendant may assert. See id. at 358-59 (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950); First National Bank of Canton, Pa. v. Williams, 252 U.S. 504 (1920); Louisville & N.R. Co. v. Mottley, 211 U.S. 149 (1908); Taylor v. Anderson, 234 U.S. 74 (1914)).

Perhaps because Horton has so troubled commentators and courts, it has been conspicuously absent from discussions of the effect of counterclaims upon the amount in controversy. See, e.g., Fenton, 748 F.2d 1358; Motorists Mutual, 404 F.2d 511. Only two reported cases outside the Texas Compensation Act context cite Horton in regard to the counterclaims and the jurisdictional amount. See Emland Builders, Inc. v. Shea, 359 F.2d 927 (10th Cir. 1966); Russell, 972 F.2d 628. In Emland Builders, the court found Horton to be of dubious instruction and held that, in any event, the complaint sufficed to meet the jurisdictional requirement.

Although the holding in Horton supports our analysis, we need not rely upon it for the decision we reach here. (Horton has been described as "baffling" by respected legal commentators, see Wright, supra at 111, and we include it only for the sake of the thoroughness of our discussion).

14


WELLFORD, Senior Circuit Judge, dissenting:

I respectfully dissent from the decision in this case based on what I believe to be a serious question about lack of jurisdiction. Spectacor proceeded in the federal court in its chosen venue, asserting diversity jurisdiction and more than the required jurisdictional amount, but only barely, on the face of the complaint. The defendant Brown filed an answer affirmatively stating "[t]he Court lacks jurisdiction over the subject matter in that the amount of controversy does not exceed $50,000." He added, among other things:

> Plaintiff has failed to state a valid claim upon which relief can be granted.

. . .

Plaintiff was already obligated to provide the sums and benefits to Defendant.

. . .

Plaintiff's Complaint was filed in bad faith to harass Defendant.

Defendant contemporaneously filed a counterclaim, seeking a substantially greater amount than was requested in the original complaint.

The district court found that the action was notfiled in bad faith because "[s]ums owed by a plaintiff to the defendant are not subtracted from the amount of plaintiff's claim when calculating the jurisdictional amount. Savarese v. Edrick Transfer & Storage, Inc., 513 F.2d 140, 142 (9th Cir. 1975)." In my view, however, the facts of Savarese are materially different from those presented by the jurisdictional issue in this case. In that case, the plaintiff sought $11,901 from the defendant who did not contest the claim. Additionally, the plaintiff acknowledged that he held some $2,578 that belonged to the defendant, which he sought to apply against the debt owed him. The defendant conceded that the amount sought by Savarese was above the jurisdictional minimum amount.[1] The defendant did not

_____

1. The Savarese court acknowledged that had plaintiff initially demanded a judgment of $9,323 (the difference after application of an offset), the district court would have lacked jurisdiction, citing Kansas City Philharmonic Ass'n v. Greyhound Lines, 257 F.Supp. 941 (W.D. Mo. 1966); C. Wright, Federal Courts, 116-17 and n.52, 134 (2d ed. 1970).

challenge, in a timely fashion, jurisdiction in its responsive pleading.

In the instant case, even if Brown had not pleaded lack of jurisdiction, a challenge to subject matter jurisdiction is not waivable; and when a challenge is made, it must be fully considered. United States ex rel Coffey v. Austin Construction, 436 F.Supp. 626 (W.D. Okla. 1977). Whether federal jurisdiction exists is determined as of the time the action is filed, not after the responsive pleading is filed. Wright, Miller and Cooper, Federal Practice and Procedure, Vol. 13B S 3608, Vol. 14A S 3702. The party seeking to invoke federal jurisdiction, once challenged, "has the burden of proving its existence." Id., S 3702.

In a suit for a sum certain that is less than the jurisdictional amount, adding a claim for punitive damages so that the jurisdictional amount may be exceeded may be insufficient to establish jurisdiction. Wiggins v. N.A. Equitable Life Ins. Co., 644 F.2d 1014 (4th Cir. 1981). Furthermore, "the extent to which a counterclaim can be considered in determining the amount in controversy never has been determined satisfactorily by the federal courts." Wright, Miller and Cooper, Federal Practice and Procedure, Vol. 14, S 3706. "Defendant can object to the court's jurisdiction over the original claim in the answer and plead the counterclaim in the alternative." Id., S 3706.

Here, the district court acknowledged that Spectacor admitted "that it does not `own' the set-off funds," but, rather than holding that that fact barred the claim, the court held that Spectacor took a "strategic action" to "obtain what it perceives to be a more amenable forum." Brown argued (I think plausibly) that Spectacor genuinely claimed only $47,421 in "salary advances" and "medical insurance premiums" made for his benefit. Brown complained, however, about the asserted "payroll tax liabilities" of $3,287, arguing that this additional claim was a " `sham' to manufacture federal court jurisdiction." The district court never decided whether, in fact, the so-called "payroll tax liability" portion of the complaint, which was necessary to exceed the jurisdictional amount of $50,000 was something other than a "sham" or a "contrivance" to establish federal jurisdiction. The district court merely held,

16

without elaboration, that the suit was filed in good faith and not for the purpose of harassing the defendant.

The majority holds that because defendant did not file a motion to dismiss for lack of jurisdiction and asserted a compulsory counterclaim, that it would consider the amount of the counterclaim in determining the amount in controversy, citing Fenton v. Freedman, 748 F.2d 358 (9th Cir. 1984). But, as the majority acknowledged, Fenton involved a situation where defendant had not first objected to jurisdiction. It is therefore distinguishable from this case, as is the earlier Ninth Circuit case, Roberts Mining Co. v. Schrader, 95 F.2d 522 (9th Cir. 1996), for the same reason.

The remaining case cited by the majority for this jurisdictional holding was Motorists Mutual Ins. Co. v. Simpson, 404 F.2d 511 (7th Cir. 1969). That court held contrary to the majority's interpretation:

When a claim over which there is otherwise jurisdiction does not embrace an amount in controversy in excess of that required by the statute, the "plaintiff-viewpoint" rule, under which jurisdiction is determined on the basis of what the plaintiff claims, requires dismissal of the claim. A problem arises, however, when although the plaintiff 's claim does not involve the requisite jurisdictional amount, a compulsory counterclaim is filed which independently meets the required amount. There are cases which hold that in such a situation federal jurisdiction should be sustained.

But irrespective of the holding in those cases, we believe that a compulsory counterclaim should not be held to give rise to federal jurisdiction where the defendant-counterclaimant has objected from the beginning to the federal court's assumption of jurisdiction over the plaintiff's main action on the ground that the amount in controversy in that action is insufficient and additionally, after his jurisdictional objection is overruled, files a compulsory counterclaim even though the amount therein involved exceeds $10,000 exclusive of interest and costs.

17

Simpson, 404 F.2d at 514 (emphasis added) (footnotes omitted).

The Simpson court, moreover, in the type of situation existing in this case, observed that "[s]ince, however, defendant did not originally choose the federal forum, the option should be his whether or not to keep the action in federal court," citing 1 J. Moore, Federal Practice P 0.98[1], at 896 (2d ed. 1964). Simpson held that it was without jurisdiction to proceed unless the original claim exceeded the jurisdictional amount. I would agree with this assessment, and I would question the authority of Home Life Ins. Co. v. Sipp, 11 F.2d 474 (3d Cir. 1926), to the extent that it indicates a contrary rule.2

The majority properly concedes that there is a "well-established rule" that a plaintiff cannot create federal jurisdiction by anticipating federal defenses. Like the majority, I perceive no persuasive basis for considering Horton v. Liberty Mutual Ins. Co., 367 U.S. 348 (1961), as authority in this case. The district court made no reference to any of these authorities except Savarese, which is easily distinguishable.

In my view, the determinative question as to adequacy of

the jurisdictional amount asserted in the complaint has not been determined. Spectacor could have filed a declaratory judgment action to have avoided these problems, but it did not. It also could have sought removal from state court to federal court had Brown sued as he indicated he would. I disagree with the majority view that Brown should lose the jurisdictional argument because he did not file a motion to dismiss, when he objected to the court's jurisdiction affirmatively in his answer. Federal courts are courts of limited jurisdiction, and I believe we should strictly construe jurisdictional requirements.

The question of whether "payroll tax liability" is a proper

_____

2. I would agree that Sipp correctly held that neither unearned premiums nor a policy loan could be added to the then minimum jurisdictional amount requirement ($3,000 plus) involving a $3,000 face amount life insurance policy to establish federal jurisdiction; and (2) filing of the defendant's counterclaim could not confer jurisdiction.

18

claim against Brown is a novel one and I see no easy answer. Was this liability actually paid or incurred, or was it a mere bookkeeping entry? Did it constitute a part of the "advance" to Brown? Was Brown liable to repay that amount to Spectacor, the IRS, or the State, if Spectacor had later deemed the salary to have been erroneously paid? In addition, I would call upon the district court to consider the "good faith" question in view of the circumstances and give an explanation for its determination in this regard. I would, therefore, REMAND to the district court for a thorough consideration of the jurisdictional issue for the reasons stated.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

19