**BERCKELEY INVESTMENT GROUP, LTD., Plaintiff**

v.

**Douglas COLKITT, Shoreline Pacific Institutional Finance, the Institutional Division of Finance West Group, and National Medical Financial Services Corporation, Defendants**

No. 4:CV–97–1242.

United States District Court, M.D. Pennsylvania.

Dec. 18, 1997.

Luis E. Delgado, Jay Starkman, Delgado, Befeler, Starkman & Magolnick, P.A., Miami, FL, Joel Eads, Piper & Marbury, LLP, Philadelphia, PA, for plaintiff.

James J. Kutz, Bridget E. Montgomery, Eckert Seamans Cherin & Mellott, LLC, Harrisburg, PA, Michael J. Lawson, Lisa M. Carvalho, Steffel, Levitt & Weiss, San Francisco, CA, for defendant Shoreline Pacific Institutional Finance, The Institutional Division of the Financial West Group.

James P. Kimmel, Jr., Marcy L. Colkitt & Associates, P.C ., Kennett Square, PA, Nicole L. Herman, Marcy L. Colkitt & Associates, P.C., Philadelphia, PA, for defendant National Medical Financial Services Corporation.

## *ORDER*

McCLURE, District Judge.

### *BACKGROUND:*

On August 13, 1997, plaintiff Berckeley Investment Group, Ltd., commenced this action with the filing of a complaint alleging breach of contract by all of the named defendants and breach of fiduciary duty on the part of defendant Shoreline Pacific Institutional Finance. The claims stem from an agreement executed on or about May 31, 1996, with Colkitt to sell to Berckeley forty convertible debentures of $50,000.00 each. Berckeley claims that Colkitt wrongfully refused to convert the debentures to common stock of defendant National Medical Financial Services Corp. (NMFSC), as required under a contract between Colkitt and Berckeley, despite demands by Berckeley.

On October 20, 1997, Colkitt filed an answer to the complaint which asserted ten affirmative defenses and a six-count counter-

claim. The counterclaim alleges violations of: (1) Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10(b)–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (Count I); Section 17 of the Securities Act of 1933, 15 U.S.C. § 77q(a) (Count II); and Section 29 of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(b) (Count III). Also, counterclaims under state law are asserted, including: violation of Sections 1–401, 1–402, 1–501, and 1–503 of the Pennsylvania Securities Act, 70 Pa. Stat. Ann. §§ 1–401, 1–402, 1–501, and 1–503 (Count IV); common law fraud (Count V); and breach of contract (Count VI).

On November 25, 1997, Berckeley filed a motion to strike the affirmative defenses of Colkitt and a motion to dismiss the counterclaims. Supporting briefs were filed contemporaneously with the motions.

On December 2, 1997, the court held an initial case management conference by telephone conference call. The attention of the court and counsel was directed at the beginning of the conference to a dispute noted in the joint case management plan as to the effect of the provisions of 15 U.S.C. § 78u–4(b)(3)(B) on Berckeley's right to conduct discovery. On December 4, 1997, the court issued an order directing briefing on the stay issue and continued the initial case management conference. No further proceedings have yet been conducted, as potentially violative of § 78u–4(b)(3)(B).

The parties have been given an opportunity to brief the stay issue, and Berckeley and NMFSC have filed briefs. The issue is therefore ripe for disposition.

## DISCUSSION:

NMFSC argues forcefully that the court is bound by the plain language of the statute to stay all proceedings pending resolution of the motion to dismiss the counterclaim. We agree that the language of the statute is plain, although for reasons in addition to those argued by NMFSC, and we agree that it mandates a stay.

The applicable statutory provision reads:

In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u–4(b)(3)(B).

For present purposes, it is clear that the case is a "private action" and that the counterclaim, at least in part, is brought under "this chapter," i.e. Chapter 2B of Title 15 of the United States Code.[1] The question is whether the case is one "arising under" Chapter 2B. Important in answering this question is the fact that the counterclaim is compulsory, as it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed.R.Civ.P. 13(a).

The Supreme Court has recited:

[C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. *See, e.g., United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241–242 [109 S.Ct. 1026, 1030–1031, 103 L.Ed.2d 290] (1989); *United States v. Goldenberg,* 168 U.S. 95, 102–103 [18 S.Ct. 3, 4, 42 L.Ed. 394] (1897); *Oneale v. Thornton,* 6 Cranch 53, 68 [3 L.Ed. 150] (1810). When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete." *Rubin v. United States,* 449 U.S. 424, 430 [101 S.Ct. 698, 701–702, 66 L.Ed.2d 633] (1981); *see also Ron Pair Enterprises, supra,* at 241 [109 S.Ct. at 1030].

---

1. Counts I and III of the counterclaim are a part of Chapter 2B. Count II is brought under § 77q(a), a part of Chapter 2A. The remaining counts, of course, as state law claims, are not brought under Chapter 2B.

*Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–254, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (parallel citations omitted).

Language analogous to that employed in § 78u–4(b)(3)(B) is contained in 28 U.S.C. § 1331, which grants district courts jurisdiction in "all civil actions *arising under* the Constitution, laws, or treaties of the United States." *Id.* (emphasis added). An action brought in state court may not be removed to federal court based on a defense or counterclaim asserted under federal law. *General Electric Capital Auto Lease, Inc. v. Mires,* 788 F.Supp. 948, 949–950 (E.D.Mich.1992)(citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2846–2847, 77 L.Ed.2d 420 (1983); *Shamrock Oil and Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)). However, the inability to remove an action based on a counterclaim is due to the language of the statutory scheme for removal, not § 1331. *Mires* at 950 (quoting *Franchise Tax Bd.* at 10, 103 S.Ct. at 2846–2847). However, even when a complaint is dismissed for lack of jurisdiction, the court may adjudicate counterclaims which present an independent basis for jurisdiction. *North Central F.S., Inc. v. Brown,* 951 F.Supp. 1383, 1400 (N.D.Iowa 1996)(quoting *Westmoreland Capital Corp. v. Findlay,* 100 F.3d 263, 269 (2d Cir.1996)). Obviously, such a case must be said to "arise under" federal

law despite the fact that the original pleading does not set forth the federal question and implicate the jurisdiction of a federal court.

From the foregoing, we conclude that a case "arises under" federal law when a pleading, whether or not the original pleading, sets forth a claim involving a substantial question of federal law.

At the same time, however, we note that, if the court did not have jurisdiction of the original claim and a permissive counterclaim were asserted, we would be required to dismiss the original claim (and the entire action). Thus, we would acquire jurisdiction over the entirety of the action only if the counterclaim were a compulsory counterclaim. This means that it must, in the language of Rule 13(a), arise from the transaction or occurrence set forth in the complaint or, in the language of the Constitution, be part of the same "case or controversy." U.S. Const. art. III, § 2. *See generally Presbytery of New Jersey of the Orthodox Presbyterian Church v. Florio,* 40 F.3d 1454, 1462 (3d Cir.1994), *cert. denied,* —— U.S. ——, 117 S.Ct. 1334, 137 L.Ed.2d 494 (1997). *See also Shamblin v. City of Colchester,* 793 F.Supp. 831, 833 (C.D.Ill.1992)(federal court has supplemental jurisdiction of compulsory counterclaims); 28 U.S.C. § 1367(a)(supplemental jurisdiction applies to claims that form part of same case or controversy under Article III).[2]

**2.** After a final draft of this order was prepared, the court became aware of *Spectacor Management Group v. Brown,* 131 F.3d 120 (3d Cir. 1997). Unfortunately, an advance copy of this opinion was not delivered to the court. We add this footnote because, despite being a diversity action, *Spectacor* supports our reasoning. Specifically, the Third Circuit recited:

> Where the circumstances surrounding a plaintiff's claim require a defendant to assert a counterclaim under Rule 13(a), defendant's claim is part of the controversy set forth in the plaintiff's complaint. The complaint initiates the legal action, but it is not the totality of the controversy. It is merely the portion of the controversy for which plaintiff seeks relief. However, the substance of the controversy extends to any compulsory counterclaim brought under Rule 13(a).
>
> [I]f the jurisdictional amount requirement serves any salutary function it is to measure the substantiality of the claim. We believe that the substantiality of the claim can best

> be gauged by reference to what is actually at stake in the litigation rather than by strict reference to plaintiff's claim for relief.
>
> 1A James Wm. Moore et al., Moore's Federal Practice, ¶ 0.167[8] (2d ed.1991).

*Spectacor,* 131 F.3d at 122–123 (footnote omitted). In the same way that a court would look at the entirety of the controversy to see if a specific amount is at stake, a court would look at the entirety of the controversy to determine what legal issues are involved.

With respect to the principle that it is the removal statute which bars a counterclaim from supporting federal jurisdiction over a claim originally filed in state court, not a question of federal jurisdiction over a controversy originally presented in federal court, *see Spectacor,* 131 F.3d at 125 (removal governed by statute and "considerations inapplicable to cases involving the exercise of original jurisdiction").

Finally, the footnote omitted from the passage quoted above notes the distinction between com-

In short, we conclude that a compulsory counterclaim under Chapter 2B is part of the same case or controversy and therefore the same action asserted in the complaint. It follows that the action "arises under" federal law for purposes of jurisdiction. Based on the identity of language, the stay provision of § 78u–4(b)(3)(B) applies. In this instance, the motion to dismiss the counterclaim requires that all proceedings be stayed pending resolution of the motion to dismiss.

In addition, the court does not believe that Berckeley has presented any substantial argument in support of the exception to the stay requirement; that is, that "particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party [Berckeley]."

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. All discovery and all other proceedings in this case are stayed pending disposition of the plaintiff's motion to dismiss the counterclaim of defendant Douglas Colkitt, filed November 25, 1997 (record document no. 34).

2. The continued initial case management conference will be rescheduled upon the lifting of the stay.

3. The parties are directed to follow the briefing schedule with respect to the motion to dismiss the counterclaim as set forth in paragraph 4 of the court's order of December 4, 1997.

4. No document other than the briefs related to the motion to dismiss the counterclaim shall be filed until the stay is lifted. An order for any further briefing on other motions already of record shall issue upon the lifting of the stay.

5. The clerk is directed to fax a copy of this order to counsel immediately.