NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4341
_____

S. CHRISTEL LIPTOK; ASHLEY M. LIPTOK; NICHOLAS J. LIPTOK;
JOHN JAMES LIPTOK; BRIAN M. LIPTOK; *W. THOMAS BOUSSUM,

Appellants

v.

BANK OF AMERICA


(*Dismissed pursuant to Fed. R. App. P. 3(e) and 3rd Cir. L.A.R. 3.3. and Misc. 107.1(a))
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-15-cv-00156)
District Judge: Honorable James M. Munley
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 15, 2019

Before: AMBRO, GREENAWAY, JR., and SCIRICA, <u>Circuit Judges</u>

(Opinion filed: May 15, 2019)
_____

OPINION[*]
_____

AMBRO, <u>Circuit Judge</u>

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

The Liptok family lives in one half of a duplex in Pottsville, Pennsylvania. For a time, Bank of America owned the adjoining half as the result of a foreclosure. The Liptoks allege that the Bank neglected its half of the duplex, and that this caused damage to the Liptok property, including a broken furnace, flooding in the basement, and mold. Led by John Joseph Liptok, the family brought this suit *pro se* in the Middle District of Pennsylvania. The case was referred to Magistrate Judge Schwab.

Matters soon went south. In an early phone conference, Mr. Liptok berated Judge Schwab and threatened to send her to "Gitmo," prompting her to summon U.S. marshals to her chambers for protection. ECF 39, No. 3:15-cv-156 (M.D. Pa). Judge Schwab recused herself, and the case was reassigned to Magistrate Judge Carlson.

The Liptoks' conduct did not improve. They refused to comply with discovery orders, prompting Judge Carlson to warn them that the case could be dismissed under Federal Rule of Civil Procedure 41(b). They responded by accusing Judge Schwab of criminal conduct and by describing the behavior of counsel for Bank of America as "[l]ittle girl antics in a big boy world." ECF 31, No. 3:15-cv-156. Mr. Liptok refused to sit for a deposition on the ground that the Bank was "making the court accessories [sic] to all the crimes," and further stated that Judge Schwab "should be dis barred [sic] and jailed in a mental ward." ECF 50, No. 3:15-cv-156. Although he eventually gave a deposition, he sought to "dismiss" it on the ground that counsel for Bank of America and Judge Carlson were "having an affair." ECF 53, No. 3:15-cv-156. Judge Carlson struck these filings from the record.

The harassment soon reached a tipping point for the Bank's counsel. Mr. Liptok appears to have posted a picture of the attorney (a third-year associate) and her husband on social media along with a written post accusing them of perjury. The attorney withdrew her appearance from the case, and Judge Carlson had to stay the matter while Bank of America secured new counsel.

Eventually the Bank filed a motion for summary judgment. It argued that the Liptoks had failed to pursue their claims and that they could not produce any evidence establishing that its actions caused their injuries. The Liptoks responded with a "[m]otion to dismiss motion of defendant" that accused Bank of America's new counsel of "attacking us" and "filing lies." ECF 73, No. 3:15-cv-156. They never responded coherently to the merits of the motion.

Judge Carlson recommended granting summary judgment for the Bank under Federal Rule of Civil Procedure 41(b) due to the Liptoks' "chaotic, undisciplined, and inappropriate litigation practice." Report & Recommendation at 6 (applying *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984)). He also recommended summary judgment on the merits; given that the Liptoks never responded to Bank of America's statement of material facts, he accepted those facts as true and concluded they failed to show causation or produce evidence of damages.

The Liptoks objected to Judge Carlson's Report & Recommendation by asserting that his "sanity is in serious question" and that he "should be ordered to have his head examined." ECF 84, No. 3:15-cv-156. The District Court noted that the Liptoks had not

mounted any legal arguments against the Report & Recommendation, adopted it in full, and granted summary judgment for Bank of America.

The Liptoks appealed. We appointed *amicus* appellate counsel to provide a neutral view of the issues: (1) whether diversity jurisdiction exists in this case, (2) whether Judge Schwab or Judge Carlson should have appointed counsel for the Liptoks, and (3) whether the District Court was correct to grant summary judgment for Bank of America because of the Liptoks' litigation conduct or on the merits.[1]

## Discussion

### A. Jurisdiction

"[W]e must ensure that the District Court and our Court have jurisdiction over a case before addressing the merits." *Hassen v. Gov't of Virgin Islands*, 861 F.3d 108, 112 (3d Cir. 2017) (citation omitted). Because the Liptoks assert the state-law claim of negligence, we evaluate whether we have diversity jurisdiction under 28 U.S.C. § 1332.

We are satisfied that we do. Bank of America is a citizen of North Carolina, where it maintains its principal place of business. *See* 28 U.S.C. § 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306–07 (2006) ("[A] bank's citizenship is determined by the place designated in the bank's articles of association as the location of its main office[.]"). As for the Liptoks, each family member "is deemed to be a citizen of the state where he [or she] is domiciled." *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). When the lawsuit was filed, all seven lived in

---

[1] We thank *amicus* counsel Katherine M. Romano of Walsh Pizzi O'Reilly Falanga LLP for her excellent brief.

Pennsylvania. Reply at 6. Now, one (Ashley) lives in New Mexico and another (John James) lives in either Pennsylvania or the District of Columbia. Compl. ¶ 5. Importantly, none are domiciled in North Carolina. Prodded by the *amicus* brief, John Joseph Liptok explained that the family's only connection to North Carolina was his temporary assignment to Marine Corps Base Camp Lejeune years ago. Reply at 3. Thus we are satisfied that all family members are diverse from Bank of America.

The amount-in-controversy requirement is met as well. "A complaint will be deemed to satisfy the required amount in controversy unless the defendant can show to a legal certainty that the plaintiff cannot recover that amount." *Spectacor Mgmt. Grp. v. Brown*, 131 F.3d 120, 122 (3d Cir. 1997). The Liptoks' demands here are erratic, ranging from $5 million per family member to $1 trillion total. Though these damages may be fanciful, we cannot say to a legal certainty that the amount in controversy is less than $75,000. The Liptoks allege thousands of dollars of personal property damage from a flood in the basement; a broken furnace costing roughly $15,000; and twelve years of oil, electric, and water bills. They also ask that Bank of America buy the adjoining property, tear it down, and clean up the premises. Because the amount in controversy is over $75,000, and because complete diversity exists between the parties, we have jurisdiction.

### B. *Appointment of Counsel*

Soon after filing this suit, the Liptoks requested a lawyer. After Judge Schwab recused herself, Judge Carlson deferred acting on the request under the factors set forth in *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993). In particular, he opted not to appoint counsel until it was clear whether the case had any merit.

The Liptoks have forfeited any challenge to Judge Carlson's choice. "[U]nless exceptional circumstances exist, a party may not obtain relief in this court without making an objection and seeking review of [a] magistrate judge's order in the district court." *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 246 (3d Cir. 1998). The Liptoks did not seek review of the order in the District Court. Nor did they raise the issue in their opening brief to us. "It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal." *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005).

Even reaching the merits, we would affirm Judge Carlson's order, which we review for abuse of discretion. *See Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002). Once a court determines "whether the claimant's case has some arguable merit in fact and law," it should proceed to balance the *Tabron* factors, including the claimant's ability to present the case and the difficulty of the legal issues. *Id.* at 499 (citing *Tabron*, 6 F.3d at 155–57).

Here, Judge Carlson concluded it was unlikely any lawyer would take the Liptoks' case. We have long instructed courts to be "sensitive" to "the indignities that some lawyers have been subjected to by certain litigants, including verbal and written abuse,

excessive demands and complaints, and malpractice suits." *Tabron*, 6 F.3d at 157 n.7. This case illustrates our warning. In the words of the neutral *amicus* counsel, the Litpoks exhibited a pattern of "accusing essentially every attorney and judge who touched their case of fraud, threats, illegal conduct, and bias, and making personal attacks against opposing counsel and judges despite repeated entreaties from the Court to refrain from such invective." Amicus Br. at 38. True to form, the Liptoks responded to the *amicus* filing with more baseless diatribes. *See* Reply at 2 ("[T]he lawyers are running wild."); *id.* at 6 ("[A]ll you have out here right now is a bunch of lawyers lying and screwing around."). It is far from clear they would listen to the advice of court-appointed counsel anyway; before our Court they have predicted that any future lawyer of theirs would be bought off by Bank of America to seek "a low settlement without our consent." Appellants' Mot. to Remand (Mar. 5, 2018); *see also* ECF 71-1 at 7, No. 3:15-cv-156 (asserting that "Lawyer 101" is to "lie cheat steal"). In short, Judge Carlson did not abuse his "broad discretion to determine whether appointment of counsel is warranted." *Tabron*, 6 F.3d at 157.

### C. Dismissal on Merits

We affirm the grant of summary judgment for insufficient evidence. The Liptoks never disputed Bank of America's statement of material facts. When a party "fails to properly address another party's assertion of fact," a court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Taking the Bank's statement of material facts as true, we conclude that the negligence claim of the Liptoks fails on two elements: causation and damages.

As to causation, they allege that the furnace broke on November 1, 2013. Compl. ¶ 9. But the Bank did not own the adjacent property until December 12, 2013, so its conduct could not have caused the furnace to break. More generally, none of the Liptoks' alleged injuries occurred during the three months that the Bank owned the property (December 2013 to March 2014). As a result, Judge Carlson was correct to conclude their claim fails on causation.

As to damages, the Liptoks' evidence is similarly slim. They assert medical injuries, but, as Judge Carlson found, they have failed to produce any expert medical evidence in support of their claim.[2]

Thus we affirm.

---

[2]     To the extent the complaint could be read as bringing a claim for breach of contract based on the Bank's alleged promise to fix the furnace, we affirm Judge Carlson's conclusion that there was no consideration and thus no contract.